Irene **ROSENBLUM**, Plaintiff,

v.

**COLORADO DEPARTMENT OF HEALTH, Defendant.**

No. 94–C–770.

United States District Court, D. Colorado.

Dec. 15, 1994.

Ronald E. Gregson, Hugh S. Pixler, Ronald E. Gregson Law Offices, David H. Goldberg, Hale Pratt Midgley Hackstaff & Goldberg, P.C., Denver, CO, for Irene Rosenblum.

Cathy H. Greer, Pamela Leggett Skelton, Hall & Evans, Denver, CO, for Colorado Dept. of Health.

Ronald E. Gregson, Hugh S. Pixler, Ronald E. Gregson Law Offices, Denver, CO, for Elizabeth Rosenblum.

## ORDER

CARRIGAN, District Judge.

Plaintiff Irene Rosenblum commenced this action against her former employer, the Colorado Department of Health, alleging discrimination on the basis of disability in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12111 *et seq.* Plaintiff died September 25, 1994, and Elizabeth Rosenblum, as personal representative of the plaintiff's estate, has been substituted as the plaintiff. However, for purposes of this order, references to "the plaintiff" will refer to Irene Rosenblum rather than her daughter, Elizabeth.

Defendant has filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff has filed a response in opposition, to which the defendant has filed a reply. The issues have been fully briefed and oral argument would not materially assist the decision process. Jurisdiction is asserted pursuant to 42 U.S.C. §§ 2000e, 12117.

## I. BACKGROUND

On June 17, 1991, the defendant hired the plaintiff as a Staff Assistant I. Because the plaintiff suffered from diabetes and required time off for doctors' appointments, she was permitted to work on a "flex time" schedule, and it was understood that she would need more frequent snack and restroom breaks than other employees.

Plaintiff was hired to replace Louise Thompson, who had been primarily responsible for licensure of health care facilities in Colorado for approximately twenty years, and who planned to retire on December 31, 1991. Plaintiff was to spend the first six months of her employment learning her job from Ms. Thompson, principally through direct observation.

Many people found Ms. Thompson difficult to work with, and the plaintiff was no exception. By October 1991, there was considerable tension between the plaintiff and Ms.

Thompson. Ms. Thompson wanted to train the plaintiff in the methods and procedures that she had developed, while the plaintiff wanted to implement changes as she learned the job. Additionally, the plaintiff found it difficult to learn her position and was dissatisfied with the type of training offered because there were insufficient written procedures and no training manual existed. Nonetheless, on October 11, 1991, the plaintiff received her first performance appraisal, on which she received an overall performance rating of "commendable."[1]

Unfortunately, the tension between the plaintiff and Ms. Thompson increased. Plaintiff has presented evidence that, although Ms. Thompson was aware of the plaintiff's diabetes, she made fun of the plaintiff for needing to take frequent snack and restroom breaks. According to the plaintiff and at least one other witness, Ms. Thompson also told her that she was "stupid," and rapped her on the head while shouting, "think, think, think." Plaintiff contends that when she told her supervisor, Ms. Janice Winter, about what she perceived as continuous verbal and physical abuse, the response always was to attempt to pacify Ms. Thompson. Although aware of the conflict between the plaintiff and Ms. Thompson, Ms. Winter does not recall ever having been told about Ms. Thompson's alleged abuse.

By the time Ms. Thompson was scheduled to leave, the defendant doubted the plaintiff's ability to handle the work and stress associated with the licensure desk. Accordingly, without affecting the plaintiff's pay or benefits, Ms. Winter arranged for Ms. Thompson to continue on a part-time basis pursuant to a six-month contract.

In February 1992, the plaintiff was hospitalized for stress-related symptoms.[2] When she returned to work, she was told that Ms. Winter had assigned Susan Wallace, another Staff Assistant I, to assume some of the plaintiff's responsibilities and to act as a liaison between the plaintiff and Ms. Thompson. Plaintiff felt threatened by this arrangement because she was the only staff assistant reporting to another staff assistant, and because she was told that if she did not learn the job completely, she would be demoted.

Ms. Thompson finally left in June 1992. Nevertheless, the plaintiff continued to feel extremely stressed. She was aware that co-workers commented on her need for frequent snacks. She continued to feel that her training was inadequate. Further, in August 1992, she discovered that her mail was being intercepted, and she was not permitted to attend a departmental retreat.[3] Plaintiff filed a formal grievance concerning her job in October 1992.

On October 7, 1992, a meeting was held to discuss the plaintiff's grievances. Plaintiff, Ms. Winter, Priscilla Thompson, the AFSCME Union Representative, and Shirley Collins, the defendant's EEO Officer, attended. As a result of the meeting: (1) Ms. Winter and Ms. Wallace were to prepare a written protocol or training guide covering licensure desk procedures; (2) Ms. Winter and Ms. Wallace were to provide additional training; (3) the plaintiff, Ms. Winter, and Ms. Wallace were to enter into mediation; (4) the plaintiff was assigned a mailbox; and (5) Ms. Winter requested an extension of time to conduct the plaintiff's performance evaluation. These proposed actions were set forth in a memorandum from Ms. Winter to the plaintiff. Ms. Collins also issued a memorandum asking the plaintiff to obtain medical documentation substantiating her need for "flex-time" accommodations and snack breaks, which she had been receiving since June 1991.

---

1. The evaluation considered eight distinct factors, for which she received the following overall ratings: management—good; occupational/professional competence—good; problem analysis and decision making—outstanding; planning, organizing and coordinating—outstanding; organizational commitment and adaptability—commendable; communications—outstanding; interpersonal relations—outstanding; and information gathering—good.

2. Stress has a particularly adverse effect on diabetics.

3. Apparently the plaintiff had declined to attend the retreat because her dog was sick, but then changed her mind one or two weeks before the retreat. Ms. Winter did not permit her to go, however, because by then the plaintiff was scheduled to cover the phones.

Despite the October 7 meeting, the plaintiff's stress continued unabated. By late 1992, she began seeing a psychologist in an attempt to deal with her stress. On December 22, 1992, she began a two-week leave of absence because of health problems. Thereafter she obtained short-term disability benefits.

Plaintiff's doctors cleared her for return to work in July 1993. However, both her psychologist and her internist expressed concern about the stress she felt in the defendant's work environment and strongly advised that she be transferred to another "department." Defendant did not have authority to place the plaintiff in a position outside the Department of Health. Thus, on July 19, 1993, the defendant terminated the plaintiff's employment for the asserted reason that she had exhausted all leave time and had not been cleared to return to work in the Department of Health.

## II. *ANALYSIS*

Summary judgment is proper if the pleadings, depositions and affidavits, if any, demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party opposing a properly supported summary judgment motion may not rest upon mere allegations of the complaint, but must set forth evidence of specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). A factual dispute is material only if, under governing law, its resolution might affect the action's outcome. A factual dispute is genuine only if a reasonable fact finder could return a verdict for the nonmoving party. *Id.* Further, on summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### A. *The ADA Claims*

■ Section 12112(a), 42 U.S.C., provides:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.[4]

Defendant first argues that it is entitled to summary judgment on the plaintiff's claims because the plaintiff was not an "individual with a disability."

The term "disability" means: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). The term "major life activities" refers to "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

■ Numerous courts have recognized that diabetes may substantially limit a major life activity. *See, e.g., Bentivegna v. United States Dep't of Labor*, 694 F.2d 619, 621 (9th Cir.1982); *Ericson v. Magic Steel Corp.*, No. 1:93–CV–809, 1994 WL 775442, 1994 U.S.Dist. LEXIS 16903 (W.D.Mich. Nov. 3, 1994); *Davis v. Meese*, 692 F.Supp. 505, 517 (E.D.Pa.1988), *aff'd*, 865 F.2d 592 (3d Cir. 1989).[5] The Equal Employment Opportunity Commission also has recognized insulin-dependent diabetes as a disability under the ADA. *See* 29 C.F.R.App. § 1630.2(g). There is no dispute that the plaintiff is a diabetic and she has presented evidence that she took insulin. Accordingly, I find and conclude that there are genuine issues of fact

---

**4.** Defendant concedes that it is a "covered entity" under § 12112(a).

**5.** *Bentivegna* and *Davis* were decided under the Rehabilitation Act of 1973, 29 U.S.C. § 794.

However, case law developed under the Rehabilitation Act is applicable to defining the term "disability" as used in the ADA. *Bolton v. Scrivner, Inc.*, 36 F.3d 939, 943 (10th Cir.1994).

concerning whether the plaintiff was an individual with a disability.[6]

Second, the defendant argues that it is entitled to summary judgment on the first claim [7] for the asserted reason that it took reasonable steps to accommodate the plaintiff's disability. Plaintiff responds that the defendant should have accommodated her need for a reduction in stress by providing a non-hostile, harassment-free environment. I have reviewed the evidence presented and conclude that the plaintiff has raised a genuine issue of material fact as to whether the defendant took reasonable steps to reduce stress in her work environment.[8] Defendant's motion for summary judgment on the first claim will be denied.

Third, the defendant asserts that it is entitled to summary judgment on the second claim [9] asserting that the reduction in the plaintiff's job duties was an effort to accommodate her need for reduced stress. A review of the facts, however, shows that there is a genuine issue of material fact with respect to whether the plaintiff's job duties were reduced as an accommodation, or whether they were reduced because the plaintiff was unable to handle the stress created by her co-workers' harassment. Accordingly, the defendant's motion for sum-

mary judgment on the second claim will be denied.

Finally, the defendant contends that it is entitled to summary judgment on the third claim [10] on the ground that the plaintiff has not identified any standard, criteria, or method of administration that had the effect of discrimination on the basis of disability. I agree. Plaintiff's response to the defendant's summary judgment motion does not set forth evidence of specific facts showing that there is a genuine issue of fact for trial with respect to her third claim. Accordingly, the defendant's motion for summary judgment on that claim will be granted.

## B. *Damages.*

■ Defendant seeks a ruling that because the plaintiff has died, she may not recover damages for pain and suffering, nor prospective earnings or benefits for periods of time after the date of her death.

■ The ADA does not address the issue of survival of causes of action. Thus, pursuant to 42 U.S.C. § 1988, the court must look to state law, provided that it is "not inconsistent with the Constitution and laws of the United States." *Robertson v. Wegmann*, 436 U.S. 584, 588–89, 98 S.Ct. 1991, 1994–95, 56

---

**6.** In its reply, the defendant asserts that it "does not argue that a diabetic condition in general, or plaintiff's condition in particular, is not a disability." (Reply at 1–2). Rather, the defendant states that the Tenth Circuit has held that "an employer's determination that a plaintiff is unable to perform a particular job because of the employee's condition does not establish a violation of the ADA. *Bolton v. Scrivner*, 36 F.3d 939, 942 (10th Cir.1994); *see also Welsh v. City of Tulsa*, 977 F.2d 1415, 1417–19 (10th Cir.1992)." (Reply at 2). However, *Bolton* and *Welsh* hold that an employee's inability to perform a single job is not a "substantial limitation on a major life activity" sufficient to make that person disabled under the Act. Diabetes may substantially affect more than the plaintiff's ability to work.

**7.** Plaintiff's first claim alleges discrimination pursuant to 42 U.S.C. § 12112(b)(5)(A), which reads:
[T]he term "discriminate" includes—(5)(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an ... employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the

operation of the business of such covered entity.

**8.** There is also a dispute over whether the plaintiff's discharge was reasonable, or whether the defendant should have transferred the plaintiff to another "department," as advised by her doctors. Defendant argues that it did not have authority to transfer the plaintiff outside the Department of Health. Plaintiff asserts that "department" does not necessarily mean "Department of Health," and that it would have been reasonable to transfer her to another area or division within the Department of Health. This dispute involves a fact issue that cannot be resolved on summary judgment.

**9.** Plaintiff's second claim asserts that the defendant discriminated against her by limiting her job assignment to clerical duties in violation of § 12112(b)(1).

**10.** Plaintiff's third claim asserts that the defendant used standards, criteria and methods of administration that had the effect of discrimination on the basis of disability in violation of § 12112(b)(3)(A).

L.Ed.2d 554 (1978); *see Slade ex rel. Slade v. United States Postal Serv.,* 952 F.2d 357, 360 (10th Cir.1991) (looking to state law to determine the survival of a Title VII action). Colorado law provides:

> All causes of action, except actions for slander or libel, shall survive and may be brought or continued notwithstanding the death of the person in favor or against whom such action has accrued ... and, in tort actions based upon personal injury, the damages recoverable after the death of the person in whose favor such action has accrued shall be limited to loss of earnings and expenses sustained or incurred prior to death and shall not include damages for pain, suffering, or disfigurement, nor prospective profits or earnings after date of death.

Colo.Rev.Stat. § 13–20–101(1). This provision is not inconsistent with the ADA, which does not address the availability of damages after the plaintiff's death. Further, it is not necessarily inconsistent with the policies underlying the ADA—namely, deterrence and victim compensation. *Cf. Robertson,* 436 U.S. at 590–91, 98 S.Ct. at 1995 (holding that nothing in the broad sweep of § 1983, or its underlying policies of victim compensation and deterrence, indicates "that a state law causing abatement ... should invariably be ignored in favor of a rule of absolute survivorship"). Accordingly, I find and conclude that the plaintiff may not recover damages for pain and suffering, nor lost earnings or benefits for times after September 25, 1994.

Defendant next argues that any back pay to which the plaintiff might be entitled should be cut off as of July 19, 1993, because she was not released to return to work with the defendant. Plaintiff responds that she *was* released to return to work, with reasonable accommodation. As indicated in note 8, *supra,* there is a genuine issue of material fact as to whether the defendant reasonably could have complied with the doctors' recommendation to transfer the plaintiff to another "department." Accordingly, the defendant's motion for summary judgment on the date back pay should be cut off will be denied.

Accordingly IT IS ORDERED that:

(1) Defendant's motion for summary judgment is granted in part and denied in part;

(2) Defendant's motion for summary judgment on the plaintiff's third claim and on the issue of damages for pain and suffering and for earnings and benefits beyond the date of her death is granted;

(3) Defendant's motion for summary judgment on the plaintiff's first and second claims and on the plaintiff's entitlement to back pay is denied; and

(4) The parties and their counsel are ordered to meet and confer within eleven days of this order in a good faith attempt to settle the case without further litigation, expense or delay. The parties shall report to this court in writing within fifteen days of this order, stating the results of their settlement negotiations and whether a conference before a Magistrate Judge or some other alternative dispute resolution proceeding would facilitate settlement.