[No. S053930. Aug. 12, 1999.]

COUNTY OF LOS ANGELES et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
KIM A. SCHONERT, as Personal Representative, etc., Real Party in
Interest.

## COUNSEL

De Witt W. Clinton, County Counsel; Gutierrez & Preciado, Calvin R. House, Nohemi Gutierrez Ferguson and Gabrielle Harner Brumbach for Petitioners.

No appearance for Respondent.

Hadsell & Stormer, Barbara Enloe Hadsell, Virginia Keeny and Lise Anderson for Real Party in Interest.

Catherine Fisk; and Karl Manheim for Protection and Advocacy, Inc., as Amicus Curiae on behalf of Real Party in Interest.

## OPINION

**KENNARD, J.**—Patricia Cordova brought an action in state court against the Los Angeles County Sheriff's Department and certain others alleging sexual harassment by her coworkers and supervisors. She asserted violations of state law as well as a federal statute, 42 United States Code section 1983, which creates a cause of action for violations, by those wielding state authority, of a person's civil rights under the federal Constitution. While the action was pending, plaintiff died in a car accident.

California law allows a deceased plaintiff's estate to maintain an action pending at the plaintiff's death and to recover any damages, including punitive damages, to which the plaintiff would have been entitled, with one exception: it precludes the estate from obtaining any damages for the

plaintiff's pain and suffering. (Code Civ. Proc., § 377.34.) Here, plaintiff's husband, Kim A. Schonert, pursued on behalf of her estate the action his deceased wife had brought in state court. The superior court found section 377.34's ban against recovery for pain and suffering applicable only to the claims plaintiff had asserted under state law. To apply this statute to the federal civil rights claims, the court ruled, would be inconsistent with the policies underlying the federal civil rights law.

The Court of Appeal upheld the trial court's ruling. We disagree.

## I. APPLICABLE STATUTORY LAW

### A. *Survival Actions in California*

When, as here, a plaintiff dies while a personal injury action is pending, California allows the action to be maintained by "the decedent's personal representative or, if none, by the decedent's successor in interest." (Code Civ. Proc., § 377.30.) This is commonly called a survival action. By statute, "the damages recoverable are limited to the loss or damage that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had the decedent lived, *and do not include damages for pain, suffering, or disfigurement.*" (Code Civ. Proc., § 377.34, italics added (hereafter section 377.34).) This is the state statute at issue here.

Under the common law, by contrast, "all causes of action for *personal torts* abated on the death of either the injured party or the tortfeasor." (*Sullivan* v. *Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 293 [63 Cal.Rptr.2d 74, 935 P.2d 781], italics added; see generally, Prosser & Keeton on Torts (5th ed. 1984) § 125A, p. 940 [the common law drew a distinction between *property* rights, such as a right to recover money due on a contract or restitution owed because of conversion, and *personal* rights, such as a right to recover compensation for injury to the person; the former survived a plaintiff's death, but the latter abated].) This was the law in California until 1949, when our Legislature enacted this state's first statute allowing for the survival of personal tort actions. (*Sullivan* v. *Delta Air Lines, Inc., supra*, 15 Cal.4th 288, 297.) That statute, codified as Civil Code section 956, provided that causes of action for personal injury did not abate upon the death of the plaintiff, but it expressly limited the damages in such actions to "loss of earnings and expenses sustained or incurred as a result of the injury by the deceased prior to his death," and it specifically excluded "*damages for pain, suffering or disfigurement*" and punitive or exemplary damages. (Stats. 1949, ch. 1380, § 2, p. 2400, italics added.)

A dozen years later, in 1961, the Legislature repealed section 956 of the Civil Code and moved its provisions, with certain amendments, to former section 573 of the Probate Code. (Stats. 1961, ch. 657, § 2, p. 1868; *Sullivan v. Delta Air Lines, Inc., supra*, 15 Cal.4th 288, 298.) At that time, the Legislature had before it a recommendation by the California Law Revision Commission (Commission) to discontinue the provision in the 1949 survivorship legislation precluding the estate of the deceased plaintiff from recovering damages for pain, suffering, or disfigurement. (Recommendation and Study Relating to Survival of Actions (Oct. 1960) 3 Cal. Law Revision Com. Rep. (1961) pp. F-5 to F-7 (hereafter 1961 Law Revision Commission Report).) To disallow such damages, the Commission reasoned, "produces a windfall for the wrongdoer." (*Id.* at p. F-7.)

But the study that accompanied the 1961 Law Revision Commission Report, drafted by the Commission's research consultant, Attorney Leo V. Killion, expressed a contrary view: " '[D]amages should not be awarded for the deceased's pain and suffering, bodily disfigurement or loss of a member of his body. Such injuries are strictly to the person of the deceased and, in and of themselves, do not lessen the value of his estate and are not of such a transmissible nature that they should be made the basis of legal liability or an award of compensatory damages after the victim's death. If the deceased were still alive, a recovery of money damages would tend to compensate him for the pain and suffering endured because of the wrongdoer's tort . . . .' " (1961 Law Revision Com. Rep., *supra*, at p. F-22, quoting Killion, *Wrongful Death Actions in California—Some Needed Amendments* (1937) 25 Cal.L.Rev. 170, 190.) But after the plaintiff's death, according to the study, "such peculiarly personal elements of damage as pain [and] suffering" would not be redressed by damages awarded to the estate. (1961 Law Revision Com. Rep., *supra*, at p. F-23.)

The Legislature apparently found Killion's view persuasive, for it chose *not* to adopt the recommendation of the 1961 Law Revision Commission to discontinue the statutory ban against recovery of damages for "pain, suffering or disfigurement." (Stats. 1961, ch. 657, § 2, p. 1868.) But the Legislature did adopt the Commission's recommendation to allow the estate to recover punitive or exemplary damages. (*Ibid.*; see 1961 Law Revision Com. Rep., *supra*, at p. F-11.)

Some 30 years later, in 1992, the Legislature enacted section 377.34, which now governs recovery of damages in survival actions. (Stats. 1992, ch. 178, § 20, p. 892.) The Legislature left intact the ban against an estate's recovery of damages for the deceased plaintiff's "pain, suffering, or disfigurement." (§ 377.34.)

B. *Federal Civil Rights Actions*

The federal statute at issue here is 42 United States Code section 1983 (hereafter sometimes referred to as the federal civil rights statute or section 1983), one of the Reconstruction-era statutes included in the Civil Rights Act of 1871. It creates a cause of action in favor of "the party injured" against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights . . . secured by the Constitution and laws . . . ." (42 U.S.C. § 1983.)

■ "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " (*Albright* v. *Oliver* (1994) 510 U.S. 266, 271 [114 S.Ct. 807, 811, 127 L.Ed.2d 114], quoting *Baker* v. *McCollan* (1979) 443 U.S. 137, 144, fn. 3 [99 S.Ct. 2689, 2694, 61 L.Ed.2d 433].) As relevant here, it allows an action against state or local officials for intentional gender discrimination, including sexual harassment, as a violation of the right to "the equal protection of the laws" protected under the Fourteenth Amendment to the federal Constitution. (*Andrews* v. *City of Philadelphia* (3d Cir. 1990) 895 F.2d 1469 [sexual harassment actionable under section 1983 as Fourteenth Amendment violation]; *Bohen* v. *City of East Chicago, Ind.* (7th Cir. 1986) 799 F.2d 1180; see *Washington* v. *Davis* (1976) 426 U.S. 229 [96 S.Ct. 2040, 48 L.Ed.2d 597] [violation of Fourteenth Amendment's equal protection clause requires proof of intentional discrimination]; 6 Larson, Employment Discrimination (2d ed. 1998) Reconstruction Statutes, § 102.01, pp. 102-2 to 102-3.)

Federal law is silent on the remedies available to those suing for a violation of their civil rights under section 1983. (See *Carey* v. *Piphus* (1978) 435 U.S. 247, 255 [98 S.Ct. 1042, 1047-1048, 55 L.Ed.2d 252].) Therefore, courts can look to "both federal and state rules on damages . . . , [choosing] whichever better serves the policies expressed in the federal statute[]." (*Sullivan* v. *Little Hunting Park, Inc.* (1969) 396 U.S. 229, 240 [90 S.Ct. 400, 406, 24 L.Ed.2d 386].) This means that the remedies available in section 1983 actions may include equitable relief as well as compensatory and punitive damages. (*Smith* v. *Wade* (1983) 461 U.S. 30, 35 [103 S.Ct. 1625, 1629, 75 L.Ed.2d 632]; *Carey* v. *Piphus, supra,* at pp. 256-264 [98 S.Ct. at pp. 1048-1053]; *Sullivan* v. *Little Hunting Park, Inc., supra,* at pp. 238-241 [90 S.Ct. at pp. 405-407]; but see *City of Newport* v. *Fact Concerts, Inc.* (1981) 453 U.S. 247, 264-271 [101 S.Ct. 2748, 2758-2762, 69 L.Ed.2d 616] [plaintiffs may not recover punitive damages under section 1983 against an offending government entity]; see also 6 Larson, Employment

Discrimination, *supra*, Reconstruction Statutes, § 105.01 et seq., p. 105-1 et seq.) In particular, the victim of a federal civil rights violation who shows "that mental and emotional distress actually was caused" by the denial of a constitutional right may generally recover damages to compensate for pain and suffering. (*Carey* v. *Piphus, supra*, at p. 263 [98 S.Ct. at p. 1052].)

## II. Principles Governing Application of State Law in Federal Civil Rights Actions

### A. Federal Preemption of State Law in a Federal Civil Rights Action Brought in State Court

Plaintiffs often bring federal civil rights actions under 42 United States Code section 1983 in state court rather than in federal court. Because section 1983 does not comprehensively dictate the procedures and remedies applicable to actions brought under it, a state court ordinarily applies state law in adjudicating those actions. The supremacy clause of the federal Constitution, however, prohibits a state court from applying state law that is inconsistent with federal law. (*Felder* v. *Casey* (1988) 487 U.S. 131, 140 [108 S.Ct. 2302, 2307-2308, 101 L.Ed.2d 123]; see Comment, *Constitutional Torts, Preemption Doctrine, and Alabama's Wrongful Death Act* (1997-1998) 28 Cumb. L.Rev. 39.) Thus, a state court adjudicating a federal section 1983 action is often faced with the question of whether application of state law to the federal cause of action would conflict with federal law. Instructive on this issue is the United States Supreme Court's decision in *Felder* v. *Casey, supra*, 487 U.S. 131.

In *Felder* v. *Casey*, the issue before the high court was whether a Wisconsin court could enforce the state's "notice of claim" statute in a federal section 1983 action the plaintiff had brought in state court against the City of Milwaukee and certain of its police officers for an allegedly unjustified use of force by police officers during his arrest. Wisconsin law required a plaintiff suing a government entity or its agents to give written notice to the intended defendants within 120 days of the claimed injury. Because of the plaintiff's failure to do so, the defendants moved to dismiss the case. The state trial court, however, refused to apply the state's notice of claim requirement to the plaintiff's federal civil rights causes of action, a decision upheld by the United States Supreme Court. (*Felder* v. *Casey, supra*, 487 U.S. at pp. 134-138 [108 S.Ct. at pp. 2304-2308].)

In finding Wisconsin's notice of claim statute inapplicable to federal section 1983 actions, the United States Supreme Court observed that "the notice requirement burdens the exercise of the federal right by forcing civil

rights victims who seek redress in state courts to comply with a requirement that is entirely absent from civil rights litigation in federal courts." (*Felder* v. *Casey, supra,* 487 U.S. 131, 141 [108 S.Ct. 2302, 2308].) The court further noted that to require compliance with such notice requirements in federal civil rights actions brought in state court would "frequently and predictably produce different outcomes in federal civil rights litigation based solely on whether that litigation takes place in state or federal court." (*Ibid.*) The court added: "States may not apply such an outcome-determinative law when entertaining substantive federal rights in their courts." (*Ibid.*)

The high court went on to say: "Just as federal courts are constitutionally obligated to apply state law to state claims, [citation], so too the Supremacy Clause imposes on state courts a constitutional duty 'to proceed in such manner that all the substantial rights of the parties under controlling federal law [are] protected.' " (*Felder* v. *Casey, supra,* 487 U.S. 131, 151 [108 S.Ct. 2302, 2313-2314]; see 1 Nahmod, Civil Rights and Civil Liberties Litigation (4th ed. 1997) § 1.59, pp. 1-91 to 1-93.)

Just two years ago, in *Johnson* v. *Fankell* (1997) 520 U.S. 911 [117 S.Ct. 1800, 138 L.Ed.2d 108], the United States Supreme Court again considered the issue of preemption of a state law in a federal section 1983 action brought in state court. The plaintiff, a former employee of a state liquor store, sued state officials, asserting that her termination denied her a property interest without due process of law, a violation of the Fourteenth Amendment to the federal Constitution. Claiming qualified immunity under federal law, the defendants moved for dismissal of the complaint. When the Idaho trial court refused to do so, the defendant officials sought review in the Idaho Supreme Court, which, applying state rules, dismissed the appeal as one taken from a nonappealable, interlocutory order. The court also noted that the trial court's denial of the defendant's motion for summary judgment was not appealable in state court as a matter of federal right. (520 U.S. 911, 913-914 [117 S.Ct. 1800, 1802-1803].) The Idaho officials challenged that ruling in the United States Supreme Court. They argued that in not allowing an interlocutory appeal, state law was contrary to federal law and therefore must be preempted. (*Id.* at p. 914 [117 S.Ct. at pp. 1802-1803].) The high court disagreed.

The court held that in dismissing the state officials' appeal, the Idaho Supreme Court had simply applied "a neutral state Rule regarding the administration of the state courts." (*Johnson* v. *Fankell, supra,* 520 U.S. 911, 918 [117 S.Ct. 1800, 1805].) Furthermore, application of that rule was not " 'outcome determinative' " within the meaning of *Felder* v. *Casey.* (*Johnson* v. *Fankell, supra,* at p. 920 [117 S.Ct. at p. 1806].) The court explained that

its use of the term "outcome" in *Felder* referred to "the ultimate disposition of the case." (*Johnson* v. *Fankell, supra,* at p. 921 [117 S.Ct. at p. 1806].)

The high court added: "If petitioners' claim to qualified immunity is meritorious, there is no suggestion that the application of the Idaho rules of procedure will produce a final result different from what a federal ruling would produce. Petitioners were able to argue their immunity from suit claim to the trial court, just as they would to a federal court. And the claim will be reviewable by the Idaho Supreme Court after the trial court enters a final judgment, thus providing the petitioners with a further chance to urge their immunity. Consequently, the postponement of the appeal until after final judgment will not affect the ultimate outcome of the case." (*Johnson* v. *Fankell, supra,* 520 U.S. 911, 921 [117 S.Ct. 1800, 1806].)

■ From these preemption decisions by the United States Supreme Court, we distill the following: Neutral state procedural rules of court administration not affecting the ultimate outcome of the controversy are not preempted by federal law. (See *Johnson* v. *Fankell, supra,* 520 U.S. 911, 918-921 [117 S.Ct. 1800, 1804-1806]; *Felder* v. *Casey, supra,* 487 U.S. 131, 138 [108 S.Ct. 2302, 2306-2307].) But state law that would produce a different outcome in state than in federal court must yield to federal law. Only then does federal preemption prevent a state court from applying state law in a federal civil rights case brought in state court. (*Felder* v. *Casey, supra,* at p. 138 [108 S.Ct. at pp. 2306-2307].)

■ Accordingly, to decide in this case whether federal law preempts California's statutory ban against an estate's recovery of damages for the deceased plaintiff's pain and suffering, we must first ascertain what survival rule a *federal court* sitting in California would apply in a federal section 1983 action.

B. *Federal Court Adoption of State Law in Federal Civil Rights Action Brought in Federal Court*

When a plaintiff dies during pendency of a civil rights case in *federal court,* there is no federal law on whether the lawsuit survives the plaintiff's death or, if it does, what damages the personal representative of the plaintiff's estate can recover in the survival action. (*Robertson* v. *Wegmann* (1978) 436 U.S. 584, 589 [98 S.Ct. 1991, 1994-1995, 56 L.Ed.2d 554]; *Moor* v. *County of Alameda* (1973) 411 U.S. 693, 702, fn. 14 [93 S.Ct. 1785, 1792, 36 L.Ed.2d 596].)

As the United States Supreme Court explained in *Robertson* v. *Wegmann, supra,* 436 U.S. at page 588 [98 S.Ct. at page 1994]: "[I]n certain areas

'federal law is unsuited or insufficient "to furnish suitable remedies" ';
federal law simply does not 'cover every issue that may arise in the context
of a federal civil rights action.' " When in a section 1983 case brought in
federal court the federal law is deemed to be deficient, a related statute, 42
United States Code section 1988, instructs courts to turn to " 'the common
law, as modified and changed by the constitution and statutes of the [forum]
State,' as long as these are 'not inconsistent with the Constitution and laws
of the United States.' " (436 U.S. 584, 588 [98 S.Ct. 1991, 1994], quoting 42
U.S.C. § 1988.)

*Robertson* involved a question of inconsistency between state and federal
law in a federal section 1983 action brought in federal court. The plaintiff,
Clay L. Shaw, sued then New Orleans District Attorney Jim Garrison and
others who had assisted in Garrison's unsuccessful prosecution of Shaw for
conspiring to assassinate President John F. Kennedy. Shaw alleged that the
defendants' actions violated his constitutional rights. Four years later, before
trial, Shaw died and the executor of his estate maintained the lawsuit. The
defendants moved for dismissal. They cited a Louisiana survival statute
providing for abatement of an action other than one for damage to property
upon the death of a plaintiff who, like Shaw, is not survived by a spouse,
children, parents, or siblings. The federal district court denied the motion; it
found Louisiana law to be inconsistent with federal law and therefore
refused to apply it. (*Robertson* v. *Wegmann, supra,* 436 U.S. 584, 585-588
[98 S.Ct. 1991, 1993-1994].)

The United States Supreme Court reversed. It observed that when "resolv-
ing questions of inconsistency between state and federal law raised under
§ 1988, courts must look not only at particular federal statutes and constitu-
tional provisions," but also at their underlying policies. (*Robertson* v. *Weg-
mann, supra,* 436 U.S. 584, 590 [98 S.Ct. 1991, 1995].) "Of particular
importance is whether application of state law 'would be inconsistent with
the federal policy underlying the cause of action under consideration.' "
(*Ibid.*) Section 1983's policies include "compensation of persons injured by
deprivation of federal rights and prevention of abuses of power by those
acting under color of state law." (*Robertson* v. *Wegmann, supra,* at p. 591 [98
S.Ct. at p. 1995].) The high court concluded that nothing in the federal civil
rights statute or its underlying policies indicated "that a state law causing
abatement of a particular action should invariably be ignored in favor of a
rule of absolute survivorship." (*Id.* at p. 590 [98 S.Ct. at p. 1995].)

"No claim is made here that Louisiana's survivorship laws are in general
inconsistent with these policies, and indeed most Louisiana actions survive
the plaintiff's death. [Citations.] Moreover, certain types of actions that

would abate automatically on the plaintiff's death in many States—for example, actions for defamation and malicious prosecution—would apparently survive in Louisiana. In actions other than those for damage to property however, Louisiana does not allow the deceased's personal representative to be substituted as plaintiff; rather, the action survives only in favor of a spouse, children, parents, or siblings. [Citations.] But surely few persons are not survived by one of these close relatives, and in any event no contention is made here that Louisiana's decision to restrict certain survivorship rights in this manner is an unreasonable one.

"It is therefore difficult to see how any of § 1983's policies would be undermined if Shaw's action were to abate. The goal of compensating those injured by a deprivation of rights provides no basis for requiring compensation of one who is merely suing as the executor of the deceased's estate. And, given that most Louisiana actions survive the plaintiff's death, the fact that a particular action might abate surely would not adversely affect § 1983's role in preventing official illegality, at least in situations in which there is no claim that the illegality caused the plaintiff's death. A state official contemplating illegal activity must always be prepared to face the prospect of a § 1983 action being filed against him. In light of this prospect, even an official aware of the intricacies of Louisiana survivorship law would hardly be influenced in his behavior by its provisions.

"It is true that § 1983 provides 'a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation.' [Citation.] That a federal remedy should be available, however, does not mean that a § 1983 plaintiff (or his representative) must be allowed to continue an action in disregard of the state law to which § 1988 refers us. A state statute cannot be considered 'inconsistent' with federal law merely because the statute causes the plaintiff to lose the litigation. If success of the § 1983 action were the only benchmark, there would be no reason at all to look to state law, for the appropriate rule would then always be the one favoring the plaintiff, and its source would be essentially irrelevant. But § 1988 quite clearly instructs us to refer to state statutes; it does not say that state law is to be accepted or rejected based solely on which side is advantaged thereby." (*Robertson* v. *Wegmann*, *supra*, 436 U.S. 584, 591-593 [98 S.Ct. 1991, 1995-1997], fns. omitted.)

The United States Supreme Court described its holding in *Robertson* as "a narrow one, limited to situations in which no claim is made that state law generally is inhospitable to survival of § 1983 actions and in which the particular application of state survivorship law, while it may cause abatement of the action, has no independent adverse effect on the policies

underlying § 1983." (*Robertson* v. *Wegmann, supra,* 436 U.S. 584, 594 [98 S.Ct. 1991, 1997].) But the court acknowledged that its conclusion might be different if it were confronted with a state law that failed to provide for the survival of " 'any tort actions,' " or one that "significantly restricted the types of actions" that did survive. (*Ibid.*) And the court declined to express a view whether abatement under state law of a federal civil rights cause of action would be allowed in a situation in which the claimed deprivation of civil rights caused the plaintiff's death. (*Ibid.*)[1]

To summarize, upon the death of a plaintiff who has a federal section 1983 action pending in a federal court, that court must apply the survival law of the forum state unless the state law is "inhospitable" to federal law when considered in light of the factors the United States Supreme Court has set forth in *Robertson* v. *Wegmann, supra,* 436 U.S. 584.

III. APPLICATION OF CALIFORNIA SURVIVAL LAW IN FEDERAL CIVIL RIGHTS ACTIONS

A. *Actions Brought in Federal Court*

As the United States Supreme Court has explained, "one specific area not covered by federal [civil rights] law is that relating to 'the survival of civil rights actions under § 1983 upon the death of either the plaintiff or defendant.' " (*Robertson* v. *Wegmann, supra,* 436 U.S. 584, 589 [98 S.Ct. 1991, 1994].) In areas such as this on which federal law is silent, 42 United States Code section 1988 directs federal courts to borrow the law of the forum state unless it is inconsistent with the purposes of the federal law. (*Robertson* v. *Wegmann, supra,* at p. 588 [98 S.Ct. at p. 1994].) In light of the high court's decision in *Robertson,* would a federal court sitting in California apply California's survival statute, section 377.34, when it has pending before it a federal civil rights cause of action brought under the federal statute, 42 United States Code section 1983? In answering that question, we turn to the pertinent state law.

In California, "a cause of action for or against a person is not lost by reason of the person's death" (Code Civ. Proc. § 377.20) and no "pending action . . . abate[s] by the death of a party . . ." (*id.,* § 377.21). In a

---

[1]A closely related issue was recently before the United States Supreme Court in *Jefferson* v. *City of Tarrant* (1997) 522 U.S. 75 [118 S.Ct. 481, 139 L.Ed.2d 433]. The court granted certiorari in that case to decide whether Alabama's Wrongful Death Act, which disallowed compensatory damages while providing for punitive damages, governed recovery in a section 1983 action by a decedent's estate claiming that the death in question resulted from the deprivation of federal constitutional rights. The court never reached the issue, however, because it dismissed the writ for lack of jurisdiction.

survival action by the deceased plaintiff's estate, the damages recoverable expressly exclude "damages for pain, suffering, or disfigurement." (§ 377.34.) They do, however, include all "loss or damage that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages." (*Ibid.*) Thus, under California's survival law, an estate can recover not only the deceased plaintiff's lost wages, medical expenses, and any other pecuniary losses incurred before death, but also punitive or exemplary damages. This state statutory provision applicable to every survival action when applied, as here, in a federal civil rights action is consistent with the dual policies of federal civil rights statute: "compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law." (*Robertson* v. *Wegmann*, *supra*, 436 U.S. 584, 591 [98 S.Ct. 1991, 1995].)

In not allowing the estate to recover damages for the deceased plaintiff's pain and suffering, our law does not undermine the federal civil rights law's goal of "compensation of persons injured by deprivation of federal rights" (*Robertson* v. *Wegmann*, *supra*, 436 U.S. 584, 591 [98 S.Ct. 1991, 1995]), for California's limitation on damages affects only the estate, not the party actually injured by the constitutional deprivation. As the high court pointed out in *Robertson*: "The goal of compensating those injured by a deprivation of rights provides no basis for requiring compensation of one who is merely suing as the executor of the deceased's estate." (*Id.* at p. 592 [98 S.Ct. at 1996].)

By specifically providing for punitive or exemplary damages, our state law seeks to deter future wrongful behavior of the kind complained of and is thus consistent with the goal of the federal civil rights law to prevent "abuses of power by those acting under color of state law." (*Robertson* v. *Wegmann*, *supra*, 436 U.S. 584, 591 [98 S.Ct. 1991, 1995].) To conclude that section 337.34's limitation on damages could have any influence on the behavior of public officials and employees, we would have to accept, to paraphrase the high court, the "farfetched" proposition that they would have both the desire and ability to select as sexual harassment victims only those who will die before resolution of a civil rights lawsuit and whose only compensable injury will be emotional distress. (See *Robertson* v. *Wegmann*, *supra*, 436 U.S. 584, 592, fn. 10 [98 S.Ct. 1991, 1996].)[2]

The California Legislature's decision to disallow a deceased plaintiff's estate from recovering such particularly personal elements of damages as

---

[2]Should the estate prevail in this lawsuit, it will be entitled to attorney fees under 42 United States Code section 1988. Even a small award of compensatory damages in a federal civil rights lawsuit can justify a substantial amount of attorney fees. (See *City of Riverside* v. *Rivera* (1986) 477 U.S. 561, 565 [106 S.Ct. 2686, 2689-2690, 91 L.Ed.2d 466] [upholding attorney fees of $245,456.25 in a case in which the compensatory and punitive damages from civil rights claims totaled $13,300].) The United States Supreme Court has expressly

pain and suffering was not "an unreasonable one." (*Robertson* v. *Wegmann*, *supra*, 436 U.S. 584, 592 [98 S.Ct. 1991, 1996].) As we explained on pages 295 to 296, *ante*, California originally followed the common law rule that all causes of actions *personal* to the plaintiff abated upon the plaintiff's death. (*Sullivan* v. *Delta Airlines, Inc., supra*, 15 Cal.4th 288, 298.) In 1949, however, our Legislature abandoned that harsh rule and enacted a law allowing for the survival of claims but limiting the damages the estate could recover, by excluding recovery for pain, suffering, and disfigurement. When the Legislature in 1961 revisited the law of survival, it had before it two conflicting proposals: one to abolish the ban against an estate's recovery of damages for the deceased plaintiff's pain, suffering, and disfigurement; the other to retain that ban because of the particularly personal nature of such damages to the deceased plaintiff. The Legislature adopted the latter view. In 1992, when the Legislature enacted section 377.34, the statute at issue here, it again retained this limitation on an estate's recovery of damages. This limitation on damages in California's survival law reflects our Legislature's informed decision that pain, suffering, and disfigurement are injuries limited strictly to the person of the deceased and are not transmissible to the estate. Except for this limitation, California law allows the estate to recover all damages to which the deceased plaintiff would have been entitled.

Essentially, the line drawn by the Legislature approximates the pecuniary out-of-pocket losses the deceased plaintiff experienced because of the defendant's unlawful behavior. These pecuniary losses, such as lost or reduced wages or expenses of medical care, actually reduced the plaintiff's income or increased the plaintiff's pecuniary expenses. If uncompensated, these pecuniary losses would reduce the value of the estate below what it would have been in the absence of the defendant's harmful conduct by reducing the plaintiff's lifetime income or by increasing the plaintiff's lifetime expenses. By contrast, when the plaintiff experiences emotional distress, the loss is nonpecuniary. Psychic injury, while it can be psychologically devastating, does not in itself reduce income or increase expenses.[3] Therefore, psychic injury does not reduce the value of the plaintiff's estate compared to what it would have been in the absence of the injury, and the Legislature's decision not to allow the estate to recover damages for such injury was reasonable.

acknowledged that the deterrent effect of such fee awards on civil rights violators is "by no means inconsequential." (*Carey* v. *Piphus, supra*, 435 U.S. 243, 257, fn. 11 [98 S.Ct. 1042, 1049].) Together with compensatory and punitive damages, attorney fee awards serve to assure "that agents of the State will not deliberately ignore [constitutional] rights." (*Ibid.*)

[3] To the extent that a plaintiff's emotional distress resulting from the defendant's tortious conduct causes consequential pecuniary loss (for example, if the plaintiff cannot work because of psychic injury and thereby loses income, or if the plaintiff incurs expenses of psychiatric counseling), California law allows the plaintiff's estate recovery for such pecuniary losses.

The estate contends that in cases of sexual harassment not to allow a deceased plaintiff's estate to recover for the plaintiff's pain and suffering is inconsistent with the policies underlying federal civil rights law. It points out that harassment victims frequently lose no wages and may suffer no other recoverable pecuniary loss. Thus, it argues that by denying an estate recovery for a decedent's emotional distress in a case of sexual harassment, section 377.34 will often result in no monetary recovery at all. Noting that the very essence of the harm suffered by any victim of sexual harassment is an affront to personal dignity, the estate argues that absent some damages tied to this injury, the constitutional infringement of the sexually harassing conduct will go wholly uncompensated.

Here, in addition to damages for emotional distress, the estate seeks compensation for the deceased plaintiff's back wages lost as a result of alleged wrongful termination, a remedy available under California's survival law. Thus, this is *not* a case in which application of the California survival rule will eliminate all possible recovery.

With respect to the estate's argument that in some sexual harassment cases compensation for emotional distress will be the primary component of compensatory damages, our reading of applicable United States Supreme Court authority, discussed in detail earlier, leads us to conclude that California's prohibition of pain and suffering damages in this small category of cases does not conflict with federal law. Nothing in *Robertson* suggests to us that by precluding an estate from recovering damages for the deceased plaintiff's emotional distress, California's survival law would be inconsistent with the compensation and deterrence policies of the federal civil rights statute even if the damages limitation were to eliminate all recovery in some sexual harassment cases. As the high court said in *Robertson* v. *Wegmann*, *supra*, 436 U.S. at page 593 [98 S.Ct. at page 1996]: "A state statute cannot be considered 'inconsistent' with federal law merely because [it] causes the plaintiff to lose the litigation."[4] We perceive no inconsistency here between state and federal law.

---

[4]The controlling authority here, *Robertson* v. *Wegmann*, *supra*, 436 U.S. 584, is the sole decision in which the United States Supreme Court has addressed the issue of inconsistency between a state's survival law and federal civil rights law. It was decided some eight years before that court, in *Meritor Savings Bank, FSB* v. *Vinson* (1986) 477 U.S. 57 [106 S.Ct. 2399, 91 L.Ed.2d 49], recognized sexual harassment as a form of sex discrimination. Therefore, the high court has yet to consider whether a state survival law precluding a deceased plaintiff's estate from recovering damages for the deceased plaintiff's emotional distress would conflict with the compensation and deterrence goals of the federal civil rights statute in a sexual harassment case in which emotional distress was the only compensable injury. We see nothing in *Robertson* to suggest, however, that the high court would categorically exempt sexual harassment cases from section 377.34's preclusion on pain and suffering damages for

For the reasons given above, we conclude that under *Robertson* v. *Wegmann, supra,* 436 U.S. 584, a federal court sitting in California and hearing a federal section 1983 action in which the plaintiff died while the matter was pending would, consistent with the dictate of 42 United States Code section 1988 that in federal civil rights actions federal courts should use the law of the forum state to fill deficiencies in federal law, apply California's survival law banning an estate from recovering damages for the decedent's pain and suffering.[5] We therefore decline the estate's request that we follow *Williams* v. *City of Oakland, supra,* 915 F.Supp. 1074, in which the United States District Court for the Northern District of California concluded that California survival law's disallowance of recovery for a deceased plaintiff's pain and suffering, as expressed in section 377.34, is "inconsistent with section 1983 [even in cases] when the victim's death was not a result of the constitutional violation." (*Williams* v. *City of Oakland, supra,* at p. 1077.) Our consideration of section 377.34, applying the factors articulated in *Robertson* v. *Wegmann,* leads us to conclude otherwise. Notably, the federal district court in *Williams* overlooked one significant factor that the high court had stressed in *Robertson*: whether a state's particular limitation on an estate's recovery of the deceased plaintiff's damages was "an unreasonable one." (436 U.S. 584, 592 [98 S.Ct. 1991, 1996].) As we pointed out at pages 304-305, *ante,* the California Legislature made an informed decision to permit an estate to recover all damages recoverable by the deceased plaintiff except for damages resulting from the deceased plaintiff's pain, suffering, or disfigurement. The Legislature considered such injuries strictly personal to the decedent and therefore not transmissible to the estate. As we have explained, this was not an unreasonable decision by our Legislature.

---

estates pursuing survival actions merely because in some such cases no damages will be recoverable by the estate.

[5]Our conclusion is consistent with the majority of decisions that have considered this or closely related issues. (See *Pietrowski* v. *Town of Dibble* (10th Cir. 1998) 134 F.3d 1006, 1009 [no inconsistency between section 1983's policies and Oklahoma statute providing for abatement of malicious prosecution claims upon the plaintiff's death]; *Evans* v. *Twin Falls County* (1990) 118 Idaho 210 [796 P.2d 87] [no inconsistency between Idaho law of total abatement of personal causes of action and section 1983]; *Parkerson* v. *Carrouth* (8th Cir. 1986) 782 F.2d 1449, 1455 [when widow sued, not for her own injuries "derivatively suffered when defendants allegedly violated her husband's civil rights," but merely as executor of his estate, overriding Arkansas law to mandate survival of action would not further section 1983's policy of compensating the person injured by a civil rights violation]; *Rosenblum* v. *Colorado Dept. of Health* (D.Colo. 1994) 878 F.Supp. 1404 [adopting, under 42 United States Code section 1988, as not inconsistent with federal law, a state survival statute precluding recovery of pain and suffering damages in case brought under the Americans With Disabilities Act]; but see *Williams* v. *City of Oakland* (N.D.Cal. 1996) 915 F.Supp. 1074 [preclusion of pain and suffering damages in "excessive force" case inconsistent with section 1983]; *Ambruster* v. *Monument 3: Realty Fund VIII Ltd.* (N.D.Cal. 1997) 963 F.Supp. 862, 865 [applying *Williams* in housing discrimination lawsuit].)

## B. *Actions Brought in State Court*

We now consider whether a California court may in a federal section 1983 action apply the damages limitation in our state survival statute, section 377.34, or whether federal law preempts our survival law.

This question is easily resolved. Federal law prohibits a state court from applying its own law in a federal civil rights cause of action only when doing so will "frequently and predictably produce different outcomes in federal civil rights litigation based solely on whether that litigation takes place in state or federal court." (*Felder* v. *Casey, supra,* 487 U.S. 131, 141 [108 S.Ct. 2302, 2308].) But, as we have determined, a federal court sitting in California would apply section 377.34, the state statute that precludes a plaintiff's estate from recovering for the deceased plaintiff's pain and suffering. Therefore, for a state court in a federal section 1983 action to use California survival law would not, simply because the matter was brought in a state court rather than a federal one, produce any different outcome in the litigation. Accordingly, here both the trial court and the Court of Appeal erred in refusing to apply California's survival statute to the estate's federal civil rights claim.

Undisputed here is that defendants' allegedly unlawful conduct under the federal Constitution did not cause plaintiff's death: She died in a car accident while this case was pending. Her federal civil rights claim is unrelated to her death, and we so limit our holding.[6]

---

[6]Therefore, we express no view on whether the preclusion of pain and suffering damages under California's survival law would be inconsistent with the policies underlying the federal civil rights law in those situations where the asserted constitutional deprivation *caused the death*. (Compare *Garcia* v. *Superior Court* (1996) 42 Cal.App.4th 177 [49 Cal.Rptr.2d 580] [considering state remedies under survival and wrongful death statutes and concluding no inconsistency with federal law] with *Guyton* v. *Phillips* (N.D.Cal. 1981) 532 F.Supp. 1154 [holding damages limitation in California survival law inconsistent with federal civil rights law]; see also *Berry* v. *City of Muskogee* (10th Cir. 1990) 900 F.2d 1489, 1506-1507 [action on behalf of estate of prisoner killed by fellow prisoners while in city custody; declining to borrow Oklahoma survival law]; *Gilmere* v. *City of Atlanta, Ga.* (11th Cir. 1989) 864 F.2d 734, 739 [declining to apply Georgia's wrongful death law to determine the correct measure of damages for deprivation of life without due process of law]; *Bell* v. *City of Milwaukee* (7th Cir. 1984) 746 F.2d 1205, 1235-1240 [Wisconsin statute precluding a decedent's estate from recovering for the decedent's "loss of life" inconsistent with section 1983's deterrent policy]; *Bass by Lewis* v. *Wallenstein* (7th Cir. 1985) 769 F.2d 1173, 1190 [following *Bell*]; *Garcia* v. *Whitehead* (C.D.Cal. 1997) 961 F.Supp. 23; *Tracy* v. *Bittles* (N.D.Ind. 1993) 820 F.Supp. 396, 398-402; *Frye* v. *Town of Akron* (N.D.Ind. 1991) 759 F.Supp. 1320, 1325-1326; *Heath* v. *City of Hialeah* (S.D.Fla. 1983) 560 F.Supp. 840; *Sager* v. *City of Woodland Park* (D.Colo. 1982) 543 F.Supp. 282.)

## CONCLUSION

All employees have the right to be treated with dignity and to work in an environment free of "severe or pervasive" abuse directed at them because of their gender. (*Harris* v. *Forklift Systems, Inc.* (1993) 510 U.S. 17, 22 [114 S.Ct. 367, 371, 126 L.Ed.2d 295].) Under the federal statute at issue here, 42 United States Code section 1983, a harassment victim who brings a claim of workplace sexual harassment in either state or federal court may recover damages to compensate for the emotional distress of the harassment. Our decision today does not affect the right of those actually injured by sexually harassing conduct to seek full redress. Applying the test the United States Supreme Court articulated in *Robertson* v. *Wegmann, supra,* 436 U.S. 584, we hold only that by precluding an estate from recovering damages for the deceased plaintiff's pain, suffering, or disfigurement, which our Legislature determined to be damages particularly personal to the deceased plaintiff, California survival law is not inconsistent with or preempted by federal law.

The judgment of the Court of Appeal is reversed.

George, C. J., Mosk, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.