[No. B042939. Second Dist., Div. Four. Apr. 24, 1990.]

KENNETH W. KIZER, as Director, etc., Petitioner and Appellant,
v.
SERGIO ORTIZ, a Minor, etc., Objector and Respondent

**COUNSEL**

John K. Van de Kamp, Attorney General, Anne S. Pressman and Barbara M. Motz, Deputy Attorneys General, for Petitioner and Appellant.

Norm Berman for Objector and Respondent.

OPINION

GOERTZEN, J.—Petitioner/appellant Kenneth W. Kizer, Director of the Department of Health (hereinafter the Department), appeals the denial of the Department's petition for permission to withdraw funds to satisfy a Medi-Cal lien to recover costs of medical services it provided to respondent Sergio Ortiz, a minor, by his guardian ad litem Margarita Ortiz. (Welf. & Inst. Code, § 14124.70, et seq.)[1] Finding that the petition was time barred, the court denied the petition. We hold that the court erred because the pertinent statute of limitations did not begin to run until the Department received notice of the settlement having been reached. Consequently, we order the superior court to grant the Department's petition forthwith.

FACTS

The pertinent facts are not in dispute. On April 19, 1979, Sergio Ortiz (respondent) was injured in a car accident. The Medi-Cal program paid $5,786.27 for the medical care and services rendered to treat his injuries.

On January 15, 1980, a civil suit was commenced on respondent's behalf for the personal injuries he sustained as a result of the car accident. At some time in 1985, respondent and defendant in that action agreed to settle for $35,000. On December 6, 1985, a hearing was held on a minor's compromise. Respondent's counsel represented to the court that there might be a Medi-Cal lien.[2] The court approved the settlement and ordered preparation of an order to that effect. The order was signed by the court on February 25, 1986, and filed on March 6, 1986.

By letter dated December 16, 1985, respondent's attorney notified the Department about the existence of the lawsuit and inquired whether Medi-Cal would exercise a lien. The letter says nothing about a settlement being

---

[1] Subsequent statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] When the court and counsel were discussing how the order effectuating the settlement should be prepared, respondent's counsel commented: "Your Honor, we have one problem that perhaps you could enlighten us on. Mrs. Ortiz was concerned about, and I was a little fuzzy about myself, and that is Medi-Cal. There is no lien in our file. However, Medi-Cal is involved. They paid approximately $6500. I would believe $6000 to Huntington Hospital. [¶] I have been in contact with them. I can't reach—they cannot find any record of this. [¶] Where should we put the prospective possible Medi-Cal lien? There is none in our file yet, but I feel—I believe that I still have an obligation to reimburse them if they come up with it—the records ten years down the road, I guess." The discussion continued and ended as follows: "THE COURT: Medi-Cal does not have any greater rights than anyone else as far as liens rights are concerned. And people who sleep on their rights lose them. [¶] [Respondent's Counsel]: The case is seven years old, Your Honor. They sure have had a lot of time to file the lien."

presently in the process of court approval. The sworn declaration of a collection representative for the Department states that this letter was received on December 28, 1985, and was the first notice received by the Department of the pendency of the instant action.

On February 19, 1986, the Department sent respondent's counsel a notice of lien form, which advised him that the Department was asserting a lien against any recovery. On March 3, 1986, the Department received a response to a questionnaire it had sent to respondent's counsel with the notice of lien. This response notified the Department that the case had been settled in December of 1985, and that respondent was disputing the validity of the Medi-Cal lien.

Over the next 11 months, a representative of the Department corresponded with respondent's counsel in an effort to resolve the matter. Thereafter, the matter was referred to the Office of the Attorney General.

PROCEDURAL HISTORY

On February 21, 1989, a petition to withdraw from deposit was filed on behalf of the Department, seeking to obtain payment of the Medi-Cal lien from the funds placed in respondent's blocked account.

Both parties submitted evidence and points and authorities concerning the petition. Respondent opposed the petition on the ground that the three-year statute of limitations (Code Civ. Proc., § 338, subd. (a)) had run at the time the petition was filed, and that the statute was not tolled by the filing of the petition to withdraw from deposit. Alternatively, respondent asserted that the Department's claim was subject to reduction for attorney fees and costs.

After the hearing, the court denied the petition.

DISCUSSION

We begin with a brief overview of the pertinent statutory scheme. Under the Medi-Cal program, the state makes payments to health care providers who render medical care and treatment to Medi-Cal beneficiaries. (§ 14000 et seq.) When health care services are provided because of an injury for which another person or entity is civilly liable, the Director has the right to recover from such person or entity the reasonable value of the services provided. (§ 14124.71.) When an action is brought by the beneficiary alone, the Department is allowed a first lien, of not more than one-half, on the

proceeds, after payment of reasonable litigation expenses and attorney's fees. (§§ 14124.74, 14124.78.)

If the Medi-Cal beneficiary brings an action against the third person believed to be civilly liable for the injuries, he or she *must* give notice to the Director of the Department within 30 days of filing the action. (§ 14124.73.) The law specifically describes how to give the required notice. (§ 14124.79.)[3]

Notice is again required if a settlement or judgment is received: "No judgment, award, or settlement in any action or claim by a beneficiary to recover damages for injuries, where the director has an interest, shall be satisfied without first giving the director notice and a reasonable opportunity to perfect and satisfy his lien." (§ 14124.76.) Again, the law provides how notice is to be given. (§ 14124.79.)

With this statutory scheme in mind, we address the issue before us.

*Commencement of the Running of the Statute of Limitations.* Both parties agree that the appropriate statute of limitations is the three-year period of Code of Civil Procedure section 338, subdivision (a) for an action upon a liability created by statute. The issue, of course, is when the statute begins to run.

The Department asserts that the statute of limitations begins to run when it receives notice of a judgment or settlement upon which it is statutorily entitled to place a lien. In the instant case, that date would be March 3, 1986. We are in accord.

The statute requires notice to the Department within 30 days of the filing of an action and again if a judgment or settlement is received. (§§ 14124.73, 14124.76.) When the Legislature mandates notice to an agency, the statute of limitations will not begin to run until notice is provided. (See *Blue Cross of Northern California* v. *Cory* (1981) 120 Cal.App.3d 723, 742-743 [174 Cal.Rptr. 901].)

The question is: With which notice does the statute of limitations begin to run? For several reasons, the most logical moment to trigger the statute of limitations is when the Department becomes aware that there exists a judgment or settlement against which it may exercise a lien. First, in the case of a Medi-Cal lien, there can be no right to collect on a lien until there

---

[3]Section 14124.79 requires all notices required by the code to be "given to the director in Sacramento except in cases where the director specifies that notice shall be given to the Attorney General. All such notices shall be given by the attorney retained to assert the beneficiary's claim. . . ."

is a settlement or judgment. (§ 14124.74.) Consequently, all the elements of the Department's cause of action are not complete until it receives notice of the judgment or settlement being entered. (*United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 597 [83 Cal.Rptr. 418, 463 P.2d 770].) Secondly, the Department does not become aware that it might suffer "damages" until it knows that a judgment or settlement is to be entered. Finally, to begin the running of the statute with notice of the filing of the action could result in the Department's statutory time lapsing before the underlying action is brought to trial.[4]

■ *Sufficiency of the Petition.* Respondent asserts that the filing of the petition to withdraw funds does not "commence an action" as required by Code of Civil Procedure section 350.[5] He insists that the Department is required to file a civil lawsuit in order to toll the running of the statute of limitations. We reject this contention.

Code of Civil Procedure section 363 provides: "The word 'action' as used in this Title is to be construed, whenever it is necessary so to do, as including a special proceeding of a civil nature." The Department's petition was just such a special proceeding. In the present case it makes no sense to require the filing of a second action. The funds out of which the lien must be paid are in a blocked account and cannot be removed without a court order. The Department sought by special civil proceeding to obtain that order. ■ In any event, the filing of a claim in superior court is the commencement of an action. (*Estate of Caravas* (1952) 40 Cal.2d 33, 39-40 [250 P.2d 593].)

---

[4] While counsel's failure to give the Department notice of the filing of the complaint, as required by section 14124.73, did not affect the holding of this case, we feel compelled to comment on counsel's actions. At the December 6, 1985, hearing on the minor's compromise, counsel represented to the court that he had been in contact with Medi-Cal. (See fn. 2, *supra.*) Other than this oral assertion, counsel did not offer proof to the court of this contact, nor did the court request it—we assume because the court accepted counsel's comment at face value. In the memorandum of points and authorities filed in opposition to the Department's petition to withdraw funds, counsel argued to the court that Medi-Cal had been notified before the December 6, 1985, hearing. As proof, he cited his comments at the December 6 hearing. However, neither to that court nor to us on appeal has counsel presented competent evidence, by sworn declaration or by copy of the section 14124.73 notice, that he, in fact, had notified Medi-Cal. The only competent evidence of when Medi-Cal received initial notice of the pending action was the sworn declaration of a Medi-Cal collection representative, which states that initial notice was received on December 28, 1985, which, though 10 days after the hearing in which the court gave oral approval to the minor's compromise and ordered preparation of the order, did not inform Medi-Cal of the settlement.

While we understand that at times the press of business can cause an attorney to "stretch" procedural truths, when faced with evidence of this having occurred we cannot remain silent. We trust that in the future counsel will make every effort to make only factually correct representations to the court.

[5] Code of Civil Procedure section 350 provides: "An action is commenced, within the meaning of this Title, when the complaint is filed."

### DISPOSITION

The order, denying the Department's petition as untimely filed, is reversed. As the superior court has no discretion to disallow a Medi-Cal lien, filed timely and in accordance with this statutory scheme, we order the payment of the lien from the net proceeds of the settlement. (*Brown* v. *Stewart* (1982) 129 Cal.App.3d 331, 342-343 [181 Cal.Rptr. 112].)

Each party to bear its own costs.

George, Acting P. J., and Todd, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.