[No. C037161. Third Dist. Oct. 28, 2002.]

RICHARD GARCIA, Plaintiff, v.
COUNTY OF SACRAMENTO, Defendant and Respondent;
STATE DEPARTMENT OF HEALTH SERVICES, Claimant and
Appellant.

68

70

---

**COUNSEL**

Bill Lockyer, Attorney General, Charlton Holland III, Assistant Attorney General, Frank S. Furtek, Susan Underwood and Janie L. Daigle, Deputy Attorneys General, for Claimant and Appellant.

Mason & Thomas and Douglas W. Brown for Defendant and Respondent.

## OPINION

**BLEASE, J.**—This case concerns the application of the collateral source rules of Government Code section 985 to a Medi-Cal lien.[1]

Under the common law rule, compensation for injuries received by an injured party from a source independent of the tortfeasor may not be deducted from the damages the plaintiff collects from the tortfeasor, nor may the defendant present evidence that the plaintiff's medical expenses have been paid by an independent source. (*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 504-505 [93 Cal.Rptr.2d 97].)

Section 985 applies the rule where the defendant is a public entity but provides the entity may bring a posttrial motion for reduction of the judgment in the amount of the collateral source payment. (§ 985, subd. (b).) Subdivision (f)(1) of section 985 directs the court to order reimbursement of a Medi-Cal lien, subject to the "section," but subdivision (g), a part of the section, authorizes the court to deny reimbursement of any collateral source if to do so would result in "undue financial hardship" upon the injured person.

The plaintiff, Richard Garcia, secured a judgment against the County of Sacramento (the County) for far less than the future medical costs of his injuries (quadriplegia) received in a fall caused in part by the defective railing of a bridge owned and maintained by the County. On the motion of the County, which invoked section 985, subdivision (g), in support of Garcia, the trial court denied reimbursement of a Medi-Cal lien held by the State Department of Health Services (DHS) because it would result in undue financial hardship to Garcia.

DHS appeals, raising issues of statutory construction, federal supremacy and abuse of discretion. We shall conclude that section 985, subdivision (g), supports the trial court's decision, is not in contravention of federal law, and prevails over any potential conflict within the Medi-Cal reimbursement provisions of the Welfare and Institutions Code, section 14124.70 et seq.

We shall affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

This dispute arises from an accident that befell Richard Garcia and rendered him a quadriplegic. In December 1997, when Garcia was 23 years

---

[1] A reference to a unspecified section is to the Government Code.

old, he fell from a bridge that was owned and maintained by the County. The cable guardrails on the bridge were loose, and when Garcia leaned on them he fell over the top cable into the creek bed below. Garcia's blood-alcohol level at the time of the accident was .23.

The trial court found the dangerous condition of the bridge contributed to Garcia's injuries. It found Garcia's total damages were $7.5 million. However, the court reduced the award to $1.5 million on the finding Garcia was 80 percent responsible for his injuries.

The future cost of Garcia's medical care and treatment is extensive. He has limited use of his arms and hands, but has no function below the waist. He is confined to a wheelchair and must use a catheter. He also has problems with his memory and thought processes. Garcia's expert presented evidence the future cost of his medical care and treatment will be $2.4 million.

Various lien holders asserted claims against Garcia's recovery. Asset Care, Inc., claimed $129,346, and Health Advocates, LLP, claimed $62,454.70. The claim at issue is the Medi-Cal lien asserted by DHS in the amount of $100,107.70.

Following the judgment, the County filed a motion to invoke the court's authority under section 985 "to expunge and/or reduce the collateral source liens," including the Medi-Cal lien, as a case of undue financial hardship.

The trial court found Garcia's net award, after deducting attorney fees and costs, would be $900,000. It determined that reimbursement of a collateral source payment would result in an undue financial hardship. The court said that "[d]ue to the severity of plaintiff's injuries, the net recovery, other claimed medical liens, future medical and rehabilitation expenses and plaintiff's lack of ability to obtain gainful employment, . . . this case is the type of case the Legislature intended the Court to exercise its discretion . . . ."

The court ordered that the Medi-Cal lien not be reimbursed.

DISCUSSION

I

*Section 985*

Subdivision (b) of section 985 provides that a public entity may bring a posttrial motion to reduce a judgment against it by the amount a collateral

source has paid or is obligated to pay for benefits provided a beneficiary prior to trial.[2]

In this case the trial court, acting on the motion of the County in support of Garcia, invoked subdivision (g) of section 985 and denied reimbursement of the Medi-Cal lien held by DHS on the ground it would result in undue financial hardship upon him.

Subdivision (g) of section 985 provides that "[*i*]*n no event*" shall a reimbursement "exceed one-half of the plaintiff's net recovery" but "the court may order no reimbursement . . . if the reimbursement . . . would result in undue financial hardship upon the [injured] person . . . ." (Italics added.)[3]

## A.

■ DHS claims that subdivision (f)(1), rather than subdivision (g), of section 985 is the dispositive provision. Subdivision (f)(1) provides the court must order reimbursement of the amounts which the plaintiff has received from a lienholder with statutory lien rights, such as Medi-Cal, "pursuant to this section and on terms as may be just."[4] Subdivision (f)(2) gives the court discretion to determine the portion of collateral source benefits to be reimbursed as to other lienholders, such as private medical programs, health

[2]Subdivision (b) of section 985 provides in pertinent part: "Any collateral source payment paid or owed to or on behalf of a plaintiff shall be inadmissible in any action for personal injuries or wrongful death where a public entity is a defendant. However, after a verdict has been returned against a public entity that includes damages for which payment from a collateral source listed below has already been paid or is obligated to be paid for services or benefits that were provided prior to the commencement of trial, . . . the defendant public entity may, by a motion noticed within the time set in Section 659 of the Code of Civil Procedure, request a posttrial hearing for a reduction of the judgment against the defendant public entity for collateral source payments paid or obligated to be paid for services or benefits that were provided prior to the commencement of trial."

[3]Subdivision (g) of section 985 provides: "In no event shall the total dollar amount deducted from the verdict, paid to lienholders or reimbursed to all collateral source providers, exceed one-half of the plaintiff's net recovery for all damages after deducting for attorney's fees, medical services paid by the plaintiff, and litigation costs; however, *the court may order no reimbursement or verdict reduction if the reimbursement or reduction would result in undue financial hardship upon the person who suffered the injury.*" (Italics added.)

[4]Subdivision (f) of section 985 provides in pertinent part: "At the hearing the trial court shall, in its discretion and on terms as may be just, make a final determination as to any pending lien and subrogation rights, and, subject to subdivisions (1) to (3), inclusive, determine what portion of collateral source payments should be reimbursed from the judgment to the provider of a collateral source payment, deducted from the verdict, or accrue to the benefit of the plaintiff. . . . The following provisions shall apply to the court's adjustments: [¶] (1) If the court has determined that the verdict included money damages for which the plaintiff has already received payment from or had his or her expenses paid by the following collateral sources: Medi-Cal, county health care, Aid to Families with Dependent

maintenance organizations, unemployment insurance, and private disability insurance carriers.

DHS argues that, since section 985, subdivision (f)(1) and (2) distinguishes between holders of statutory lien rights and other sources of compensation, the Legislature intended to give trial courts discretion to reduce a lien asserted by the latter group but not the former. We disagree.

DHS ignores the role that section 985, subdivision (g), which does not distinguish between collateral sources, plays as a limitation of the preceding subdivisions. Subdivision (g) applies, as noted, "[i]n any event," which plainly signals that its provisions are a limitation on the other provisions of section 985. Moreover, subdivision (f)(1) is made subject to the "section" of which it is a part, including subdivision (g).

For these reasons section 985, subdivision (g) gives the trial court discretion in cases of undue financial hardship to deny reimbursement of a Medi-Cal lien.

## B.

DHS argues the trial court's interpretation of section 985 does not comport with the Legislature's "stated purpose" of limiting a plaintiff's double recovery of damages as evidenced by a letter to the Governor (Deukmejian) from the Attorney General (Van de Kamp) urging approval of the public entity tort-reform legislation (which included § 985). The letter stated, "[T]his legislation would limit double-recovery of damages, providing for a portion of the award to go to the source of those benefits or to be reduced from the judgment."

"The significance to be accorded extrinsic evidence of legislative intention . . . depends upon its capacity to resolve ambiguities in statutory language . . . ." (*In-Home Supportive Services v. Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 720, 739 [199 Cal.Rptr. 697].) DHS can point to no ambiguity in the language of section 985, the resolution of which would be aided

Children, Victims of Crime, or other nonfederal publicly funded sources of benefit with statutory lien rights, the court shall order reimbursement from the judgment of those amounts to the provider of a collateral source payment *pursuant to this section* and on terms as may be just. [¶] (2) If the court has determined that the verdict includes money damages for which the plaintiff has already received payment from or had his or her expenses paid by the following collateral sources: private medical programs, health maintenance organizations, state disability, unemployment insurance, private disability insurance, or other sources of compensation similar to those listed in this paragraph, the court may, after considering the totality of all circumstances and on terms as may be just, determine what portion of the collateral source benefits will be reimbursed from the judgment to the provider of the collateral source payment, used to reduce the verdict, or accrue to the benefit of the plaintiff." (Italics added.)

by the letter. The limitation of a plaintiff's double recovery cannot be the sole purpose of the legislation. Otherwise the Legislature would not have included *any* provision allowing the trial court to deny or limit the reimbursement of a collateral source.[5] Legislative intent may not be used to bootstrap a meaning that cannot be found in the statutory language. (See *City of Sacramento v. Public Employees' Retirement System* (1994) 22 Cal.App.4th 786, 793-794 [27 Cal.Rptr.2d 545].)

## C.

■ DHS sets forth various public policy arguments why the provisions of section 985 should not be applied. It claims the result is in contravention of the purpose of the Medi-Cal program, i.e., to recover funds obtained from the beneficiary's judgment, award, or settlement against a third party. It argues the trial court's ruling is inequitable to the taxpayers of the state, and does not achieve the purpose of section 985, i.e., to prevent double recovery of damages by the plaintiff.

DHS does not seek to employ the public policy argument to resolve a statutory ambiguity of consequence to the action. Rather, it asks that on public policy grounds alone we rule in its favor.

A public policy argument may be employed in the resolution of a statutory ambiguity under proper circumstances but does not stand alone as superior to a conflicting statute. In the form advanced by DHS, the public policy argument must be addressed to the Legislature.

In any event, the trial court's interpretation of section 985 is not in contravention of public policy. As a rule, injured Medi-Cal beneficiaries who have recovered from a third party for their injuries should be required to reimburse Medi-Cal for the cost of medical services rendered. However, in rare cases such as this, the amount awarded the injured beneficiary is insufficient to both reimburse Medi-Cal and pay for the injured's future medical expenses. In the present case, the award was insufficient to pay for future medical expenses, even if Medi-Cal received no reimbursement. A double recovery, which will not unjustly enrich Garcia, is not offensive from a policy standpoint in this instance. We fail to see how the result in this case is inequitable to the taxpayers of the state. As we see it, Medi-Cal will pay for Garcia's future medical care one way or another.

---

[5]As a alternative basis for its ruling, the trial court found section 985, subdivision (f) conferred discretion to expunge or reduce the Medi-Cal lien. As we have determined the trial court correctly denied reimbursement under section 985, subdivision (g), we need not address DHS's claim the trial court's alternate reasoning was incorrect.

## II

### *Welfare and Institutions Code Section 14124.74*

Welfare and Institutions Code section 14124.74, subdivision (a), provides that in an action prosecuted by the beneficiary alone, the court shall first order the payment of expenses and attorney fees from the judgment and then "shall, on the application of the director, allow as a first lien against the amount of the . . . judgment . . . the reasonable value of additional benefits provided to the beneficiary under the Medi-Cal program, as provided in subdivision (d) of Section 14124.72 . . . ."

DHS claims this section is in conflict with subdivision (g) of section 985 and should prevail as the more specific provision. We disagree.

■ The direction of Welfare and Institutions Code section 14124.74, subdivision (a) that the trial court "allow as a first lien . . . the reasonable value of [Medi-Cal] benefits upon the application of the director," appears facially inconsistent with the discretion granted the court by section 985, subdivision (g), to deny enforcement of the lien in cases of undue financial hardship.

However, the more specific question is whether the trial court's authority to determine whether reimbursement of the lien would result in "undue financial hardship" is in conflict with the director's authority to "[w]aive . . . collection [when it] would result in undue hardship upon the person who suffered the injury . . . ." (Welf. & Inst. Code, § 14124.71, subd. (b)(2).)

The Medi-Cal lien statutes do not expressly provide that the director's discretion to impose a lien is a bar to the court's discretion to deny reimbursement, when to impose the lien would result in undue financial hardship. To harmonize these provisions is to recognize that discretion to waive or deny reimbursement for undue financial hardship lies with two entities. The failure of the director to exercise such discretion does not necessarily conflict with exercise of discretion by the court. The director and the court occupy different positions with respect to access to the facts upon which such a hardship judgment could be made. The director may not have been aware of the facts showing the hardship that would result from enforcement of a lien.

■ However, on the assumption there is a conflict we proceed to a resolution of the claim.

■ " 'It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after.such general enactment.' " (*In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593]; see also *Agricultural Labor Relations Bd. v. Superior Court* (1976) 16 Cal.3d 392, 420 [128 Cal.Rptr. 183, 546 P.2d 687]; *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 21 [276 Cal.Rptr. 303, 801 P.2d 1054, 20 A.L.R.5th 1016].) The rule is embodied in statutory form. "[W]hen a general and particular provision are inconsistent, the latter is paramount to the former." (Code Civ. Proc., § 1859.)

■ DHS argues the Medi-Cal lien provision is specific to the recovery of Medi-Cal expenditures from third parties while section 985 generally applies to all cases in which the third party is a public entity. We disagree.

The subject of the Medi-Cal statutes, of which the lien provisions are a part, is the recovery of Medi-Cal expenditures from a collateral source. The subject of section 985 is the recovery from a collateral source, including Medi-Cal, when the source is a public entity. The Medi-Cal lien statutes apply to all cases in which a Medi-Cal lien is applicable, including the case of a public entity. Section 985 specifically limits the enforcement a Medi-Cal lien in the case of a public agency. It provides an explicit exception to enforcement of the general lien provisions of the Medi-Cal statute.

Thus, section 985 is the specific statute because the Medi-Cal recovery statutes, standing alone, include the subject of the recovery of Medi-Cal liens in cases where a public agency is the defendant responsible for the injuries. Section 985 is not broad enough to include the subject of Medi-Cal liens in any context other than a case involving a public agency.

The trial court was correct in concluding that section 985 is the specific statute and takes precedence over the Medi-Cal lien recovery statutes even assuming a conflict exists.

### III

*Court's Discretion to Deny Reimbursement*

DHS argues the courts have "repeatedly held" the director of DHS has the sole authority to waive a Medi-Cal lien, relying on *Brown v. Stewart* (1982) 129 Cal.App.3d 331 [181 Cal.Rptr. 112] and *Kizer v. Ortiz* (1990) 219 Cal.App.3d 1055 [268 Cal.Rptr. 666]. Neither case is controlling.

In *Kizer v. Ortiz, supra,* 219 Cal.App.3d at page 1061, the court ordered payment of a DHS lien, citing *Brown v. Stewart, supra,* 129 Cal.App.3d 331, for the assertion the superior court had no discretion to disallow a Medi-Cal lien. Unlike the case before us, *Kizer v. Ortiz* did not involve a public agency defendant, and thus the trial court had no discretion to disallow the lien.

*Brown v. Stewart,* cited by *Kizer v. Ortiz,* also is not controlling. The defendant tortfeasors argued that DHS's practice of filing and serving a notice of lien in the third party action was procedurally improper. They argued DHS was required to file a motion or its equivalent, which the court, in its discretion, might or might not grant. (*Brown v. Stewart, supra,* 129 Cal.App.3d at p. 342.) The court disagreed, noting that no statute granted the courts discretion over Medi-Cal liens and discretion to waive all or part of the lien rested only with the director of DHS. (*Ibid.*)

However, *Brown v. Stewart, supra,* 129 Cal.App.3d 331, was decided in 1982, five years before section 985 was enacted, at a time when there was no statutory authorization of judicial discretion to limit enforcement of a Medi-Cal lien.

DHS also argues the Medi-Cal lien recovery statutes prevail because Welfare and Institutions Code section 14124.78 provides "[e]xcept as otherwise provided in this article, *notwithstanding any other provision of law,* the entire amount of any settlement of the injured beneficiary's action or claim, with or without suit, is subject to the director's claim for reimbursement of the reasonable value of benefits provided and any lien filed pursuant thereto . . . ." (Italics added.)

The section is inapplicable, since it applies only to a settlement. The reimbursement claimed here is from a judgment.

## IV

### *Federal Law*

DHS argues the trial court's interpretation of section 985 is "in direct contravention of federal law, which mandates that DHS seek reimbursement for Medi-Cal benefits provided to a beneficiary whose injuries were caused by third party tortfeasors."[6]

The supremacy clause of the federal Constitution prohibits the court from applying a state law that is inconsistent with federal law. (*County of*

---

[6]The County argues DHS waived this argument by not asserting it below, a claim DHS disputes. We consider the issue because it involves a question of law that can be resolved on

*Los Angeles v. Superior Court* (1999) 21 Cal.4th 292, 298 [87 Cal.Rptr.2d 441, 981 P.2d 68].)

The California Medi-Cal program pays the costs of health care of qualifying individuals who lack the funds to pay them. (Welf. & Inst. Code, § 14000.) California receives funding for this program from the federal government. (42 U.S.C. § 1396 et seq.) DHS argues that section 985 conflicts with 42 United States Code section 1396a(a)(25)(A) and (B), which states: "A State plan for medical assistance must— [¶] . . . [¶] . . . provide— [¶] (A) that the State or local agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties . . . [and] [¶] . . . [¶] (B) that in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability . . . ."

We fail to see how the provisions of section 985, allowing the court to limit reimbursement to DHS in limited cases of undue financial hardship, are preempted by a federal law that specifies the conditions for federal approval of a state plan for federal assistance. Moreover, to authorize the courts to deny reimbursement in extenuating circumstances does not run afoul of a plan that requires DHS to seek reimbursement.

Our review of cases from other states yielded only one that specifically addressed this question. The Supreme Court of Illinois dismissed a similar argument against its state statute, holding: "We believe it is the clear intent of the statutory language used in the reenactment of section 11—22 to permit trial courts to exercise sound discretion in adjudicating charges claimed by the Department of Public Aid and to apportion any recovery between the Department and the plaintiff, taking into account attorney's fees and costs. Such discretion, wisely exercised, may assist in achieving settlements where trials might otherwise be necessary. . . . The Department has clearly sought reimbursement, and we do not believe section 11—22 operates in contravention of this Federal mandate." (*Davis v. City of Chicago* (1974) 59 Ill.2d 439, 444-445 [322 N.E.2d 29, 32].)

Here, as well, DHS has clearly sought reimbursement, and vigorously argued its right to reimbursement without diminution of the amount by the trial court in exercise of its discretion. The actions of DHS in this case

undisputed evidence. (*CNA Casualty of California v. Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 618 [222 Cal.Rptr. 276].)

demonstrate that section 985 does not conflict with DHS's adherence to the federal conditions of the state plan.

DHS relies on our prior opinion in *Brown v. Stewart, supra,* 129 Cal.App.3d 331. In that case, the claim was made that 42 United States Code section 1396a(a)(25)(A) preempted Civil Code section 3333.1. Civil Code section 3333.1 allowed a defendant in a personal injury professional negligence action against a health care provider to introduce evidence of collateral source payments. It allowed the defendant to introduce evidence of amounts paid pursuant to the United States Social Security Act as a benefit to the plaintiff because of the injury. (*Brown v. Stewart, supra,* at p. 334.) It also provided that " '[n]o source of collateral benefits introduced pursuant to subdivision (a) shall recover any amount against the plaintiff nor shall it be subrogated to the rights of the plaintiff against a defendant.' " (*Ibid.,* italics omitted.)

We concluded that Medi-Cal liens were not encompassed by the language of Civil Code section 3333.1 because they were neither an amount " 'payable as a benefit to the plaintiff pursuant to the United States Social Security Act,' " nor an amount " 'payable as a benefit to the plaintiff as a result of the personal injury pursuant to . . . any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the cost of medical, hospital, dental, or other health care services.' " (*Brown v. Stewart, supra,* 129 Cal.App.3d at pp. 334, 337, 339-340, italics omitted.) We referred to 42 United States Code section 1396a(a)(25), and stated, "We cannot presume the Legislature intended to enact a provision in violation of federal supremacy principles . . . ." (*Brown v. Stewart, supra,* at p. 341.)

The concurring opinion was more direct. It stated, "[Civil Code] section 3333.1 impermissibly trenches upon provisions of the Social Security Act having precedence by virtue of the supremacy clause of the United States Constitution. As the majority opinion emphasizes . . . '[t]he Social Security Act itself requires participating states in the Medicaid program to seek reimbursement for Medicaid payments from third party tortfeasors. . . . [¶]Plainly, no reimbursement can be successfully sought where, by reason of [Civil Code] section 3333.1, subdivision (b), '[n]o source of collateral benefits introduced pursuant to subdivision (a) shall recover any amount against the plaintiff nor shall it be subrogated to the rights of the plaintiff against a defendant.' 'State action must give way to federal legislation where a valid "act of Congress fairly interpreted is in actual conflict with the law of the State." ' " (*Brown v. Stewart, supra,* 129 Cal.App.3d at p. 346 (conc. opn. of Blease, J.).)

The language of section 985 differs from that of Civil Code section 3333.1 in at least one critical respect. Civil Code section 3333.1 provided that no

source of collateral payments may recover against a plaintiff or be subrogated to the rights of a plaintiff against a defendant. Section 985, subdivision (f), by contrast, provides that no source of collateral payments may recover against a plaintiff or be subrogated to the rights of a plaintiff against a defendant *"other than in the amount so determined by the court."* (Italics added.) The court's discretion to deny reimbursement of a Medi-Cal lien under section 985, subdivision (g) is limited to cases of undue financial hardship.

Under Civil Code section 3333.1, DHS would have been completely prohibited from recovering reimbursement for Medi-Cal expenditures in cases of medical malpractice against health care providers, had we determined Medi-Cal payments fell within the scope of that section. Hence, we concluded we should not construe state law to conflict with a federal law requiring DHS to seek reimbursement of Medi-Cal payments. Here, however, nothing prevents DHS from seeking reimbursement, and reimbursement may only be denied by the court in cases of extreme hardship.

Moreover, the trial court's discretion under section 985 is congruent with the discretion held by the director of DHS under Welfare and Institutions Code section 14124.71, subdivision (b)(2), which allows the director to waive any claim if collection would result in "undue hardship upon the person who suffered the injury . . . ." We may assume that if that section does not conflict with federal law, neither does section 985. If federal law allows states to forgive liens in cases of undue hardship, we see no reason why a trial court, as well as a director of DHS, cannot determine which cases constitute such undue hardship.

## V

### *Abuse of Discretion*

DHS claims the trial court's finding that reimbursement of the Medi-Cal lien would result in undue hardship to Garcia was an abuse of discretion.

"An abuse of discretion will be found only where the trial court's decision exceeds the bounds of reason or contravenes the uncontradicted evidence." (*Tahoe Keys Property Owners' Assn. v. State Water Resources Control Bd.* (1994) 23 Cal.App.4th 1459, 1470 [28 Cal.Rptr.2d 734].) We will reverse for abuse of discretion only if there was no reasonable basis for the trial court's action. (*Gilbert v. National Corp. for Housing Partnerships* (1999) 71 Cal.App.4th 1240, 1250 [84 Cal.Rptr.2d 204].)

The trial court made the following findings relevant to its determination of undue hardship: "By all accounts, plaintiff is presently 25 years of

age and as a result of his fall, he suffered a burst fracture to his seventh cervical vertebrae, rendering him a C7 quadriplegic. Plaintiff also suffered a brain contusion which causes him problems with memory and thought process. In addition, plaintiff will live the rest of his life confined to a wheelchair with paralysis below the waist and some limited use of his arms and hands. Plaintiff's life care plan for treatment and rehabilitation . . . projects the present cash value of future costs of medical care and treatment to be $2.4 million. Due to the permanency of his injuries, plaintiff's ability to obtain and maintain gainful employment will be substantially limited by his paralysis and head injury. The fact that plaintiff's net recovery is only $900,000, not taking into account the $129,346 medical lien by Asset Care and the $62,454.70 medical lien by Health Advocates, LLP, the Court finds that plaintiff will endure a financial hardship due to the lack of sufficient funds to provide for plaintiff's future medical and rehabilitation needs should the Court order reimbursement of the Medi-Cal lien." Having made this finding, the trial court denied reimbursement of the Medi-Cal lien, the Asset Care, Inc., lien, or the Health Advocates, LLP, lien.

We fail to see how the court's ruling was an abuse of discretion. Garcia's future medical costs far exceed his recovery even if *no* amounts are deducted for any liens, attorney fees or costs. Payment of even one of the liens would cause an undue financial hardship. The court did not abuse its discretion in finding that a reduction in the amount of the Medi-Cal lien would cause an undue financial hardship.

DISPOSITION

The judgment (order denying reimbursement) is affirmed.

Scotland, P. J., and Kolkey, J., concurred.