Filed 7/17/13  Conservatorship of Willett CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| Conservatorship of the Person and Estate of RUTH ELAINE WILLETT. | D062408 |
| STEPHAN WILLETT, Petitioner and Appellant, v. GERRY A. DONNELLY, as Conservator, etc., et al., Objectors and Respondents. | (Super. Ct. No. 37-2011-00150603-PR-CP-NC) |

APPEAL from an order of the Superior Court of San Diego County, Richard G. Cline, Judge.  Affirmed.

Stephan Willett, in pro. per., for Petitioner and Appellant.

Ruben Rodriguez for Objector and Respondent Geraldine Donnelly.

No appearance for Objector and Respondent Jolaine Hatter.

Stephan Willett appeals the order appointing Gerry A. Donnelly conservator of the person and estate of his mother, Ruth Elaine Willett.[1] Stephan contends he should have been appointed conservator because, as Ruth's son, he is more familiar with her medical and financial problems than is Donnelly, an unrelated professional fiduciary. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Stephan, who is Ruth's son and lives in Virginia, petitioned the probate court to appoint him temporary conservator of Ruth's person "[t]o prevent [Ruth's] daughter, Jolaine Hatter[,] from moving [Ruth] to a non-dementia ward outside [San Diego] [C]ounty, controlling her, and her estate being plundered and waste occurring to the estate." The probate court (Hon. Harry L. Powazek) granted the petition and issued letters of temporary guardianship of the person to prevent Ruth's removal from the assisted living facility at which she had been residing.

Stephan also petitioned the probate court to appoint him general conservator of Ruth's person and estate. Stephan alleged that Ruth's husband used to manage her "physical well being" and finances but had died four months earlier; and after his death, Ruth was unable to care for herself and was living in a dementia ward at an assisted living facility. Stephan also alleged that Ruth suffered from "manic episodes," which required court-ordered medication and shock therapy, and recently had been hospitalized after she fell at the assisted living facility. According to Stephan, Hatter exerted undue

---

1      Because Stephan and Ruth share the same last name, we use their first names for brevity. We intend no disrespect or undue familiarity in doing so.

influence over and perpetrated fraud on Ruth. Specifically, Stephan accused Hatter of (1) convincing Ruth to leave her home of 40 years and put it up for sale; (2) convincing Ruth to move to a non-dementia ward of a different assisted living facility closer to Hatter; (3) removing a vehicle from the estate; (4) having Ruth withdraw money from accounts; (5) wasting money; (6) receiving money and personal loans from the estate for many years; and (7) refusing to provide "an accounting of money out of spite toward [Stephan]."

Hatter opposed Stephan's petition to be appointed as Ruth's general conservator. Hatter contended that in trust documents and powers of attorney Ruth had designated that others besides Stephan manage her affairs. In support of this contention, Hatter submitted a copy of a durable power of attorney for health care in which Ruth designated Hatter in preference to Stephan as conservator of the person and a copy of a family trust declaration that designated her uncle as trustee of a family trust. Hatter also filed a declaration in which she stated that Stephan was "not suited to act as a conservator for [Ruth]" because he "is emotionally detached from her" and "is morbidly self-centered." According to Hatter, Stephan's "jealous[y] of [her] close relationship to [their] parents . . . is what lies behind his false claims that [she was] looting the estate, when, in fact, [she] only seek[s] to preserve its assets for [Ruth's] use."

The probate court appointed Parisa Farokhi Weiss to act as Ruth's attorney. (See Prob. Code, §§ 1471, subd. (b), 1828, subd. (a)(6).)[2] Weiss reviewed the probate court

_____

[2] Subsequent undesignated section references are to the Probate Code.

3

file and spoke to Ruth, Stephan, and Hatter. Weiss reported that Ruth objected to the appointment of a conservator and had estate planning documents sufficient to manage her affairs. Weiss therefore recommended that the temporary letters of conservatorship granted to Stephan be terminated, and that his petition for appointment as general conservator be denied.

At a review hearing concerning Stephan's temporary letters of conservatorship, the probate court directed the parties to select a neutral party to act as Ruth's conservator and a psychiatrist to evaluate her. If the parties could not agree on these selections, the court directed each party to submit two names and corresponding résumés for a conservator and for a psychiatrist. The court extended Stephan's temporary letters of conservatorship, but ordered that he make no major decisions regarding Ruth's physical placement or financial matters.

Only Weiss, acting on behalf of Ruth, complied with the probate court's order by proposing two conservators and two psychiatrists. The court appointed Donnelly temporary conservator and Dominick Addario, M.D., as psychiatric evaluator. After the case was assigned to a different judge (Hon. Richard G. Cline), the court suspended Stephan as temporary conservator of Ruth's person and confirmed the appointment of Donnelly to that position.

Weiss subsequently filed a supplement to her earlier report to the probate court regarding Stephan's petition for appointment as general conservator of Ruth's person and estate. In the supplement, Weiss stated she had met with Ruth on several occasions to

4

discuss the conservatorship. According to Weiss, Ruth wanted Stephan "to have no rights towards her estate . . . or any involvement regarding her person." Ruth also nominated Donnelly as conservator of her estate.

About three weeks later, Dr. Addario filed a capacity declaration and psychiatric evaluation concerning Ruth. According to Dr. Addario, Ruth suffers from dementia and bipolar disorder and has severe impairment of judgment, attention, concentration, and memory. As a result, Ruth is subject to undue influence, lacks capacity to give informed consent to medical treatment, and is not competent to enter into contracts or modify a will. In Dr. Addario's opinion, Ruth's mental status will not improve, and she requires a permanent conservatorship and residence in a safe and secure setting such as the assisted living facility where she has been residing.

After receiving the supplemental report from Weiss, the capacity declaration and psychiatric evaluation from Dr. Addario, and other papers from Stephan and Hatter, the probate court held a hearing at which the parties submitted Stephan's petition for appointment of a general conservator for Ruth's estate and person for decision without additional evidence or argument. The court subsequently issued a minute order appointing Donnelly permanent conservator of Ruth's estate and person.

DISCUSSION

The parties agree Ruth needs a conservator, but they disagree over who that should be. Although it is difficult to discern in Stephan's briefing a cogent legal argument among all the invective and accusations of wrongdoing he directs at Hatter and Donnelly, as best we can tell Stephan contends he should be appointed Ruth's conservator because

5

he is a family member; "knows the type of care [Ruth] needs"; has "full knowledge" of Hatter's efforts "to defraud, control, and hide assets"; and "has zealously sought to timely protect Estate assets that he knows are being misappropriated and/or wasted away."[3] Donnelly counters that "appointing a disinterested, third-party, private professional fiduciary is in the best interests of [Ruth] because there is discord among her children." As we shall explain, Donnelly has the better argument.

A.      *The Proper Standard of Review Is Abuse of Discretion*

The parties disagree on the threshold issue of which standard of review applies. Stephan contends the standard of review "should be de novo in this case." He admits he "could not find a case on point," but "believes a case of this magnitude warrants a higher standard of review." Donnelly asserts we should review the trial court's order under the deferential abuse of discretion standard. We agree with Donnelly.

---

[3]      At various points in his briefing, Stephan also asks us to: (1) award him attorney fees; (2) sanction the probate court and Dr. Addario "for professional misconduct based on the assessment of [Ruth]"; (3) require Weiss to return to Ruth's estate the $11,000 in attorney fees she was paid, and report the matter to the State Bar; and (4) order that he be permitted to see Ruth during an unspecified trip to California. Stephan, however, cites no facts of record or legal authorities to support any of these requests. In any event, we have no jurisdiction to grant any of his requests because the trial court made no rulings regarding them and they have nothing to do with the order on appeal. (See Code Civ. Proc., § 906 [appellate court may review intermediate ruling "which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party"]; *Leone v. Medical Board* (2000) 22 Cal.4th 660, 668 [appellate court reviews and corrects errors in trial court orders and judgments]; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 948 [appellate court may not review decisions not directly related to judgment or order being appealed].)

6

In selecting a conservator for a proposed conservatee, a probate court exercises its discretion and is "to be guided by what appears to be for the best interests of the proposed conservatee." (§ 1812, subd. (a); see *Conservatorship of Wendland* (2001) 26 Cal.4th 519, 545.) We review an order appointing a conservator for abuse of discretion. (*Conservatorship of Ramirez* (2001) 90 Cal.App.4th 390, 403; *Guardianship of Mosier* (1966) 246 Cal.App.2d 164, 177.) "This standard is not met by merely arguing that a different ruling would have been better." (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281.) Rather, the party challenging the order must show the court "exceeded the bounds of reason" (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478); by transgressing the confines of the applicable principles of law (*Guardianship of K.S.* (2009) 177 Cal.App.4th 1525, 1534); or by otherwise acting in an arbitrary, capricious, or patently absurd manner (*R.H. v. Superior Court* (2012) 209 Cal.App.4th 364, 374). "We will reverse for abuse of discretion only if there was no reasonable basis for the trial court's action." (*Garcia v. County of Sacramento* (2002) 103 Cal.App.4th 67, 81.)

B.     *The Probate Court Did Not Abuse Its Discretion by Appointing Donnelly Conservator of Ruth's Person and Estate*

To determine whether the probate court abused its discretion when it appointed Donnelly conservator of Ruth's person and estate, we first set out the general governing principles. A proposed conservatee may nominate a conservator in the petition or in some other signed writing if the proposed conservatee "has sufficient capacity at the time to form an intelligent preference," and the court must appoint that nominee unless it finds such appointment "is not in the best interests of the proposed conservatee." (§ 1810.) If

7

the proposed conservatee has not properly nominated a conservator and no spouse, domestic partner, parent, or sibling is under consideration, the order of preference for appointment as conservator is (1) an adult child of the proposed conservatee or the child's nominee; (2) any other person or entity eligible for appointment as a conservator under the Probate Code, or under the Welfare and Institutions Code if no person or entity is willing to act as a conservator. (§ 1812, subd. (b)(2), (5).) In a contested proceeding, the selection of a conservator "necessarily entails making a factual determination of whether or not the appointment of the proposed conservator will best serve the interests of the proposed conservatee." (*Conservatorship of Durham* (1988) 205 Cal.App.3d 548, 554.)

Donnelly initially suggests there is a statutory preference for her appointment because Ruth, through her attorney, nominated Donnelly as conservator. A probate court must appoint a proposed conservatee's nominee as long as the proposed conservatee has sufficient capacity to make the nomination, unless the court finds the nominee's appointment is not in the proposed conservatee's best interests. (§ 1810; *Conservatorship of Ramirez*, *supra*, 90 Cal.App.4th at pp. 400-401.) Here, the court did not make any findings regarding Ruth's capacity or best interests. Although in such circumstances we ordinarily would imply all findings necessary to support the order challenged on appeal, we may do so only if the implied findings are supported by substantial evidence. (*Madera Oversight Coalition, Inc. v. County of Madera* (2011) 199 Cal.App.4th 48, 66; *Jie v. Liang Tai Knitwear Co.* (2001) 89 Cal.App.4th 654, 666 (*Jie*).) The only evidence of Ruth's capacity — Dr. Addario's capacity declaration and psychiatric report — establishes, however, that Ruth has dementia and severe impairment of judgment, and

8

therefore does not have the capacity to make an intelligent preference regarding selection of a conservator. Thus, the preference for a proposed conservatee's nominee prescribed by section 1810 does not apply.

Without a nomination by Ruth entitled to statutory preference, the choice between Stephan and Donnelly is subject to the standards prescribed by section 1812. When nominees are "equally qualified in the opinion of the court," there is a statutory preference, on which Stephan relies, for an adult child of the proposed conservatee over an unrelated person eligible for appointment as a conservator. (§ 1812, subd. (b)(2), (5).)[4] Even if we assume, without deciding, that Stephan and Donnelly are equally qualified to act as Ruth's conservator, the statutory preference for an adult child is not controlling. Rather, the selection of a conservator "is solely in the discretion of the court and, in making the selection, the court is to be guided by what appears to be for the best interests of the proposed conservatee." (§ 1812, subd. (a).) Thus, although "statutory law gives preference to spouses and other persons related to the conservatee [citation], who might know something of the conservatee's [affairs], the law also permits the court in its sole discretion to appoint unrelated persons and even public conservators." (*Conservatorship of Wendland*, *supra*, 26 Cal.4th at p. 545.)

---

[4] Stephan cites an unpublished decision of the First District Court of Appeal in support of this position and cites several other unpublished California appellate cases throughout his briefing. These citations are in clear violation of the California Rules of Court, which, with exceptions not applicable here, prohibit citation of unpublished opinions. (Cal. Rules of Court, rule 8.1115(a).) Stephan "is to comply with rule 8.1115 in all future filings, or risk having his briefs rejected for filing." (*Alviso v. Sonoma County Sheriff's Dept.* (2010) 186 Cal.App.4th 198, 213, fn. 8.)

Under the "best interests" standard, the record supports the probate court's decision to appoint Donnelly instead of Stephan as Ruth's conservator. Donnelly's résumé indicates she is qualified to act as a conservator based on her training; prior administration of an estate; and more than 20 years of experience in probate, conservatorship, guardianship, and trustee matters. Stephan, by contrast, admits in his briefing that although he is an attorney, he is unfamiliar with estate administration because "his main practice has become protecting consumers in plaintiff class actions." Additionally, because Ruth lives in San Diego County, Donnelly, who works in San Diego, is preferable to Stephan, who resides in Virginia. (See *Guardianship of Brown* (1976) 16 Cal.3d 326, 336 ["[A] nonresident guardian of an incompetent may be appointed. [Citation.] Our case law, however, establishes that such appointments are not favored, and a resident guardian is preferred '"unless some very strong reason [for the appointment of a nonresident] is made to appear."'"].) Finally, Ruth, through her attorney, stated a desire that Stephan not be appointed her conservator; and documents filed by Stephan and Hatter in the probate court indicate Stephan does not have a close relationship with his mother and has a rancorous relationship with Hatter. Under these circumstances, the probate court reasonably could decide that appointing a non-relative, professional fiduciary to act as Ruth's conservator was preferable to appointing Stephan to serve in that position. (See *id.* at p. 339 ["Where there is estrangement or, as in the instant case, a long period of separation and infrequent communication, blood relationship necessarily diminishes in importance."]; *Prost v. Schuffman* (Mo.Ct.App. 2006) 202 S.W.3d 41, 44 [good cause exceptions to preference for appointment of

10

relatives over strangers as guardians include "dissension in the family" and "adverse interest of the relative and the incapacitated person"]; *In re Ollie D.* (N.Y.App.Div. 2006) 30 A.D.3d 599, 600 [817 N.Y.S.2d 142, 143] ["bitter dissension between the incapacitated person's family members justified the appointment of a neutral third-party guardian"].)

In sum, substantial evidence supports the probate court's implied finding that appointment of Donnelly instead of Stephan as Ruth's conservator was "for the best interests of [Ruth]." (§ 1812, subd. (a); see *Conservatorship of Ramirez*, *supra*, 90 Cal.App.4th at p. 401 [best interests finding is reviewed for substantial evidence]; *Jie*, *supra*, 89 Cal.App.4th at pp. 666-667 [implied finding supported by substantial evidence was sufficient to support challenged order].) That decision "did not exceed the bounds of reason, so the court did not abuse its discretion." (*Blue Cross of California, Inc. v. Superior Court* (2009) 180 Cal.App.4th 1237, 1257.)

## DISPOSITION

The order appointing Donnelly general conservator of Ruth's person and estate is affirmed.

_____

IRION, J.

WE CONCUR:

_____

BENKE, Acting P. J.

_____

O'ROURKE, J.