Filed 2/18/15  Cooper v. County of Los Angeles CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| YAMONTE COOPER, | B251628 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. TC026357) |
| v. | |
| COUNTY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County.  William Barry, Judge.  Affirmed.

Law Offices of Dale M. Fiola and Dale M. Fiola for Plaintiff and Appellant.

McMillion & Hirtensteiner and Sylvia Havens for Defendants and Respondents.

Plaintiff and appellant Yamonte Cooper (plaintiff) appeals from the order dismissing his action for disability discrimination, retaliation, failure to engage in the interactive process, and violation of section 1983 of title 42 of the United States Code (section 1983) against defendants and respondents County of Los Angeles (County) and County employees Monique Conard, Debbie Craig, and Dina Miller (collectively, defendants)[1], after the trial court sustained, without leave to amend, defendants' demurrer to the third amended complaint. We affirm the trial court's order.

## BACKGROUND

**Factual background**

Plaintiff began working for the County Probation Department as a Detention Service Officer in December 1998. He was promoted to a Deputy Probation Officer I in February 2000, and to a Deputy Probation Officer II in January 2003. Following his January 2003 promotion, plaintiff was placed on an automatic, one-year probation. (L.A. County Code, tit. 5, appen. 1, rule 12.01.)

From January 2003 to May 2003, plaintiff worked in the Probation Department's Centinela office. In February 2003, plaintiff received a memorandum criticizing his work performance in an incident involving a minor. Plaintiff filed a grievance claiming the criticism was both untrue and unfair.

In January 2003 and April 2003, plaintiff complained about the presence of asbestos and other contaminants in the Centinela office and the impact of those contaminants on worker health. In May 2003, plaintiff was diagnosed with respiratory ailments and took a work-related injury leave. In September 2003, the County notified plaintiff that his one-year probationary period would be adjusted upon his return to work to account for his leave of absence.

---

[1]   The trial court granted a motion to quash service of the summons and complaint on named defendants Nancy Signer, Aurora Natividad, Susan Kudo-Lee, and Tamara Brown, none of whom were employed by the County at the time the County agreed to accept service on behalf of the individual defendants.

On October 25, 2004, the County assigned plaintiff to work in the Probation Department's Crenshaw office. Plaintiff submitted a medical certification releasing him from work from October 26, 2004, until December 7, 2004.

Sometime between December 7, 2004 and May 5, 2005, plaintiff submitted "a return-to-work with restrictions." On May 6, 2005, Francine Jimenez, the Probation Department's affirmative action officer, sent plaintiff a letter inviting him to schedule an "Interactive Process Meeting" to discuss his request to return to work with restrictions. Plaintiff responded on May 17, 2005, stating that he was unable to drive the 18-mile one-way distance to the Probation Department's offices. He offered to meet at his attorney's office instead. On June 14, 2005, Jimenez noted that she had informed plaintiff's attorney on June 3, 2005, about the interactive process. Neither plaintiff nor his attorney met with Jimenez.

In early January 2006, plaintiff was assigned to work in the Probation Department's Van Nuys office and he returned to work in that office. Plaintiff complained that an air vent near his work area contained particulates that affected his breathing. In response, the County had the exterior of the air vent cleaned. Plaintiff's respiratory problems persisted, and his doctor again placed him on medical leave.

Plaintiff's medical leave expired sometime before February 21, 2006, and plaintiff notified Sue Knott in the Probation Department that he wished to return to work. Knott advised plaintiff that he must have his medical restrictions removed before he could do so.

On April 14, 2006, the County sent plaintiff a letter requesting medical documentation for his absence from work. Plaintiff submitted on June 8, 2006, a certificate from the Center for Pain Medicine for eight weeks of medical leave. Four days later, on June 12, 2006, plaintiff contacted Aurora Natividad at the Probation Department to inquire about returning to work. Natividad told plaintiff there were no light duty assignments available. Plaintiff spoke to Natividad several times in June, August, September, and December 2006 about returning to work. Natividad told plaintiff

3

he must have his medical restrictions removed in order to return and recommended he look for another job.

Between December 2007 and June 2008, plaintiff provided the County with a series of medical certificates from his health care providers classifying his condition as "TTD," or temporarily totally disabled, and placing him on a medical leave of absence through November 2008.

Between June 2009 and November 2010, the Probation Department sent plaintiff several requests for a medical certificate or other documentation to explain his continued absence from work. In response, plaintiff provided medical certificates from his health care providers.

On July 23, 2009, an agreed medical examiner sent a "return to work" certificate to the Probation Department on plaintiff's behalf stating that plaintiff could return to work on November 1, 2009. Plaintiff contacted the Probation Department on August 24, August 25, and March 5, 2010, about returning to work but was told there were no available positions.

In April 2010, the Probation Department sent plaintiff a "Notice of Intent to Discharge from Probationary Period" stating that plaintiff had been working for other employers, including Pasadena City College, while on medical leave from the Probation Department. Plaintiff was not, however, subsequently discharged from his employment.

Plaintiff applied for disability retirement from the County, but his application was denied in February 2012. On August 17, 2012, the Probation Department notified plaintiff that the Department deemed his continued absence from work to be a resignation from County employment.

**Procedural background**

*Initial complaint*

Plaintiff filed his initial complaint on March 27, 2012, alleging causes of action for disability discrimination, retaliation, failure to engage in the interactive process, wrongful constructive termination, violation of section 1983, and wrongful constructive termination for whistleblowing activities.

4

Defendants demurred to the initial complaint, and the trial court sustained the demurrer, without leave to amend, as to the constructive termination causes of action, but granted leave to amend the remaining claims.

### First amended complaint

Plaintiff filed a first amended complaint, to which defendants again demurred. The trial court sustained the demurrer, with leave to amend, and gave plaintiff the following guidance on amending the allegations:

> "I am going to need you to allege that [plaintiff] was, in fact, able to return to work with specificity, and I am going to need you to allege that, in fact, there were positions that were available and that he could have gone to that he was not returned to. . . . So, for example, with the Van Nuys, he was returned to work. If that's a basis for your allegation of -- an allegation of liability or circumstances of wrongful conduct, I need to know why being assigned to work in Van Nuys was not acceptable. It was too far, whatever it was. So you are going to need to tighten up your allegations so we can proceed accordingly."

### Second amended complaint

Plaintiff filed a second amended complaint, and defendants again demurred. At the hearing on the demurrer, the trial court pointed out the deficiencies that remained uncured in the amended pleading:

> "Starting at paragraph 10(a) of the second amended complaint . . . [t]he plaintiff alleges that he has difficulties performing basic daily activities such as walking, running and any physical exertion which cause him to gasp for air, difficulty work activity as Deputy Probation Officer 2, where he must walk and run to restrain juveniles, et cetera. And so I think we have a situation where the plaintiff has alleged and is probably bound by irreconcilable allegations. He's alleging there was a failure to accommodate. But in my reading of paragraph 10(a) he's stating that his breathing difficulties made him unable to do the job. . . . It seems to me it's clear after the second amended complaint that the plaintiff wasn't -- was unable to perform. And because of that he was absent from work for substantial periods. . . . [A]n an employer is not required to accommodate someone who cannot perform essential tasks of his work."
>
> "And with regard to retaliation, it would be the same analysis. It's not a failure to accommodate if you can't do the work. Attempt to

5

terminate is not sufficient to claim that they terminated you. It has to be an actual adverse job action. Failure to engage in [the interactive] process. It seems to me from the allegations of the second amended complaint, which consist with the original complaint and the amended complaint, that the rep for the county placed a burden on the plaintiff to call and schedule it. He asked to have it done at his lawyer's office. It never got scheduled. And there's no allegation that he tried to reschedule it for the offices of the County rep. And [there is nothing] that says that the County has to go elsewhere, or why it couldn't be done by voicemail or . . . conference call or whatever. And that's the same against the civil rights allegation."

Although the trial court stated that its tentative ruling had been to sustain the demurrer without leave to amend, the court allowed plaintiff one final opportunity to attempt to state a claim against defendants.

### *Third amended complaint*

Plaintiff filed a third amended complaint, the operative pleading in this appeal, asserting causes of action for disability discrimination, retaliation, failure to engage in the interactive process, and violation of section 1983.

Plaintiff alleges that his respiratory problems coincided with his alleged exposure to asbestos and toxic substances at the Probation Department's Centinela office between January and May 2003. Plaintiff's respiratory problems included "coughing, wheezing, shortness of breath, chest tightness, pain and pressure, which manifested themselves upon physical exertion." He claims to have experienced these symptoms "at work, at play and at home" and that he "had difficulties performing basic daily activities, such as walking, running, and any physical exertion, which caused him to gasp for air." Plaintiff alleges that these difficulties "pervaded his work activity as a Deputy Probation Officer II, where he must walk and run, and restrain juveniles at the detention facilities who become unruly." He therefore took an extended medical leave of absence.

Notwithstanding his respiratory problems, plaintiff alleges he was able to perform the essential duties of his job, "with or without reasonable accommodation, *depending on the work environment*." In a work environment that contained asbestos particulates or irritants, plaintiff claims to have been capable of performing his job duties with the aid of

6

a respirator or other protective equipment.  In a work environment "*free of asbestos-related particulates or irritants*," plaintiff alleges he could perform his job duties without any accommodation.  Plaintiff claims the County discriminated against him by precluding him from returning to work and by denying him reasonable accommodation for his disability.

Plaintiff alleges that he sought on multiple occasions to return to work but was denied the opportunity to do so.  He claims that the County criticized his work performance, denied him reasonable work accommodations, placed him in "job limbo" and attempted to terminate his employment in retaliation for his complaints about asbestos, his medical leaves of absence, and his application for worker's compensation benefits.

Respondents demurred to the third amended complaint.  At the hearing on the demurrer, the trial court noted that plaintiff had failed to rectify the contradictory allegations in his complaint.  The court explained:

> "Plaintiff alleges that any physical exertion caused plaintiff to gasp for air, then his work activity as a Deputy Probation Officer required walking, running, and restraining juveniles.  And has breathing problems and difficult for him to work and engage in everyday life activities.  He then alleges that he was able to perform job functions with or without breathing or [accommodation].  That's been the subject of some dialogue of prior demurrers. . . .  [I]t's irreconcilably conflicting.  If no accommodation was required, then there should be no basis for the cause of action for discrimination . . . and failing to provide reasonable accommodation because no accommodation was required.  The plaintiff's new allegation that industrial respirator was required in order to perform his job is insufficient.  He's not alleged that the air in any work environment is asbestos tainted.  If they were exposed to asbestos, and had asbestos or some other condition related to asbestos exposure, you wouldn't expect that to improve.  The retaliation cause of action, which is the second cause of action, depends on the allegations of a denial with reasonable accommodation, return to work and engaging in interactive process.  Again, the problem is, of course, that he's in a situation where he's alleging that he is temporarily totally disabled and totally disabled in the same sentence."

The trial court sustained the demurrer without leave to amend. An order dismissing the action was filed on August 12, 2013. This appeal followed.

## DISCUSSION

### I. Standard of review

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967.) The legal sufficiency of the complaint is reviewed de novo. (*Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 790.)

### II. Disability discrimination

The Fair Employment and Housing Act (Gov. Code, § 12940, et seq.)[2] (FEHA) prohibits discrimination based on an employee's physical disability. Under FEHA, it is unlawful for an employer to bar or to discharge a person from employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment because of the person's physical disability or medical condition. (§ 12940, subd. (a).)

A plaintiff asserting a FEHA disability discrimination claim bears the burden of establishing that "he or she (1) suffered from a disability, or was regarded as suffering from a disability; (2) could perform the essential duties of the job with or without

---

[2] All statutory references are to the Government Code, unless stated otherwise.

8

reasonable accommodations, and (3) was subjected to an adverse employment action because of the disability or perceived disability.  [Citation.]"  (*Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297, 310.)

### A.  *Ability to perform essential job duties*

Although FEHA "proscribes discrimination on the basis of an employee's disability, it specifically limits the reach of that proscription, excluding from coverage those persons who are not qualified, even with reasonable accommodation, to perform essential job duties."  (*Green v. State of California* (2007) 42 Cal.4th 254, 262.)  The statute provides:  "This part does not prohibit an employer from refusing to hire or discharging an employee with a physical or mental disability . . . where the employee, because of his or her physical or mental disability, is unable to perform his or her essential duties even with reasonable accommodations, or cannot perform those duties in a manner that would not endanger his or her health or safety or the health or safety of others even with reasonable accommodations."  (§ 12940, subd. (a)(1).)  "By its terms section 12940 makes it clear that drawing distinctions on the basis of physical or mental disability is not forbidden discrimination in itself.  Rather, drawing these distinctions is prohibited only if the adverse employment action occurs because of a disability and the disability would not prevent the employee from performing the essential duties of the job, at least not with reasonable accommodation."  (*Green, supra*, at p. 262, italics omitted.)

Plaintiff's own allegations show that he was unable, with or without reasonable accommodation, to perform the essential duties of his job as a deputy probation officer.  Those duties, plaintiff acknowledges, include walking, running, and restraining unruly juveniles.  Walking, running, and any physical exertion, however, caused plaintiff to suffer debilitating symptoms such as "coughing, wheezing, shortness of breath, chest tightness, pain and pressure," and left him gasping for air.  Plaintiff's health care providers certified that he was unable to work and classified plaintiff's status as "TTD," or temporarily totally disabled.

Plaintiff's claim that his condition prevented him from performing his job duties only when he was exposed to asbestos particulates or irritants is contradicted by

9

allegations that he experienced debilitating symptoms "[a]t all times stated herein," "at work, at play and at home."

Plaintiff failed to meet his burden of showing that he could, with our without reasonable accommodation, perform the essential duties of his job. The trial court accordingly did not err by sustaining the demurrer to plaintiff's claim for disability discrimination under FEHA.

### B. *Adverse employment action*

The demurrer to the disability discrimination cause of action was also properly sustained because plaintiff failed to allege an adverse employment action -- another essential element of a FEHA discrimination claim. (*Sandell v. Taylor-Listug, Inc., supra,* 188 Cal.App.4th at p. 310.) Under FEHA, an adverse employment action is one that materially affects the terms, conditions, or privileges of employment. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1052 (*Yanowitz*).) "A change that is merely contrary to the employee's interests or not to the employee's liking is insufficient." (*Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1455.) "[A] mere oral or written criticism of an employee or a transfer into a comparable position" is not an adverse employment action under FEHA. (*Id.* at p. 1457.)

Plaintiff claims to have suffered the following "adverse employment actions" as the result of his disability: (1) he was assigned to work in the Probation Department's Van Nuys office near an air vent that affected his breathing. Although the exterior of the air vent was cleaned after plaintiff complained, the interior was not, causing his respiratory problems to "flare up"; (2) the Probation Department denied plaintiff's requests to return to work between 2006 and 2010, despite available job openings at various locations throughout the County, and advised him to have his medical restrictions removed; (3) the Probation Department requested medical documentation covering his leaves of absence; (4) the Probation Department notified plaintiff in 2003 that his probationary period would be adjusted upon his return to work; (5) the Probation Department denied plaintiff's grievances in 2003 regarding critical memoranda he received about his failure to take action regarding a minor, and in 2005 seeking to remove

10

from his personnel file documentation regarding his medical condition; and (6) the Probation Department sent plaintiff a notice of intent to discharge him because he had been working for other employers while on medical leave from the Probation Department. As we discuss, none of the foregoing actions, individually or collectively, constitutes an adverse employment action actionable under FEHA.

Returning plaintiff to work in the Van Nuys office does not constitute an adverse employment action. (*Akers v. County of San Diego, supra*, 95 Cal.App.4th at p. 1455 [transfer into a comparable position not an adverse employment action under FEHA].) Plaintiff has alleged no facts that show any discriminatory intent behind his relocation to the Van Nuys office. Rather, plaintiff's transfer to the Van Nuys office, where no asbestos-containing materials are alleged to be present, suggests an effort on the part of the County to address plaintiff's complaints about asbestos in the Centinela office.

Neither the denial of plaintiff's request to return to work until his doctor removed plaintiff's medical restrictions, nor the County's periodic requests for verification of plaintiff's medical condition as the reason for his work absences constitutes an adverse employment action. Plaintiff provided the County with numerous medical certificates stating that he was totally disabled during time periods when he sought to return to work. Plaintiff's disability prevented him from performing "basic daily activities, such as walking, running, and any physical exertion" without "gasp[ing] for air." The County's requirement that plaintiff no longer be "totally disabled" before returning to a job that required him to walk, run, and restrain unruly juveniles was not an adverse employment action. That deputy probation officer positions were available at other County facilities during plaintiff's disability does not alter the result, as there is no allegation that the essential job duties for those positions differed from those at plaintiff's previous assignments. Moreover, plaintiff himself informed the Probation Department that his doctor-imposed driving restrictions prevented him from driving to any location more than 18 miles away.

Plaintiff's claims of discrimination and retaliation premised on the County's actions in 2003 and 2005 extending plaintiff's probationary period and denying plaintiff's

11

grievances are barred by the statute of limitations. As the County points out, the timely filing of an administrative complaint is a prerequisite to bringing an action for damages under FEHA. (*Medix Ambulance Service, Inc. v. Superior Court* (2002) 97 Cal.App.4th 109, 116.) Unless an exception applies, no complaint may be filed "after the expiration of one year from the date upon which the alleged unlawful practice . . . occurred." (§ 12960, subd. (d).) Plaintiff did not file his complaint with the Department of Fair Employment and Housing until July 26, 2010, and does not allege that any exception to the one-year limitations period applies. Conduct that occurred before July 26, 2009, accordingly cannot serve as a basis for liability.

The notice of intent to discharge plaintiff from employment because he worked for other employers while on disability leave from the Probation Department is not an adverse employment action because that notice was never acted upon. (See *McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 392-393 [proposed, but unimplemented, suspension of employee not actionable].)

Plaintiff failed to demonstrate that he suffered an adverse employment action. The trial court did not err by sustaining the demurrer to plaintiff's discrimination cause of action on that basis.

## III. Retaliation

An adverse employment action is also a necessary element of a FEHA retaliation claim. (*Yanowitz, supra*, 34 Cal.4th at p. 1042; *Loggins v. Kaiser Permanent Internat.* (2007) 151 Cal.App.4th 1102, 1108-1109.) Because plaintiff failed to allege an actionable adverse employment action, the trial court did not err by sustaining the demurrer to the cause of action for unlawful retaliation under FEHA.

## IV. Failure to engage in the interactive process

FEHA requires an employer who receives "a request for reasonable accommodation by an employee . . . with a known . . . disability" "to engage in a timely, good faith, interactive process with the employee." (§ 12940, subd. (n).) "'The "interactive process" required by . . . FEHA is an informal process with the employee or the employee's representative, to attempt to identify a reasonable accommodation that

12

will enable the employee to perform the job effectively.  [Citation.] . . .'  [Citation.]"
(*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1013 (*Scotch*).)

The availability of a reasonable accommodation is a prerequisite to liability under FEHA, and the burden of establishing such availability rests on the employee.  (*Nadaf-Rahrov v. Nieman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 984 (*Nadaf-Rahrov*).)  To state a claim for failing to engage in the interactive process, the plaintiff must therefore allege not only that the employer failed to engage in the process, but that a reasonable accommodation was available.  (*Ibid.*)

Plaintiff contends he stated a viable claim against the County for failure to engage in the interactive process because he could have been reassigned to available deputy probation officer positions at other County locations where he would not be exposed to toxic substances or asbestos.  Reassignment is a reasonable accommodation for a physically disabled employee who cannot be accommodated in his original pre-injury job.  (*Raine v. City of Burbank* (2006) 135 Cal.App.4th 1215, 1223.) While an employer "must make affirmative efforts to determine whether a position is available" the employer is not required to reassign the disabled employee if " 'there is no vacant position for which the employee is qualified.'  [Citations.]"  (*Ibid.*)

The allegations in plaintiff's third amended complaint establish that there were no deputy probation officer positions for which he was qualified.  Plaintiff alleges that he "suffered coughing, wheezing, shortness of breath, chest tightness, pain and pressure . . . upon physical exertion" and that he experienced these symptoms not only at work, but also "at play and at home."  Plaintiff further alleges that "performing basic daily activities, such was walking, running, and any physical exertion," left him gasping for air.  Although he acknowledges that the job duties of a Deputy Probation Officer II include physically exerting activities such as walking, running, and restraining juveniles -- the very activities that caused him "to gasp for air" -- plaintiff claims he was able to perform these job duties at locations where he would not be exposed to asbestos or toxic substances.  Plaintiff does not and cannot reconcile this claim with his contradictory allegations that "[a]t all times stated" in the third amended complaint, whether plaintiff

13

was at work, at home, or at play, he could not walk, run, or physically exert himself without gasping for air.

Plaintiff's claim that he was able to work at other asbestos-free County facilities is also contradicted by his allegations of continued respiratory problems following his transfers to the Probation Department's Crenshaw and Van Nuys offices. There is no allegation that asbestos-containing materials were present at either the Crenshaw or Van Nuys locations.

Plaintiff's allegation that the County could have accommodated his disability by placing him in available deputy probation officer positions at juvenile camp or juvenile hall facilities located elsewhere in County is contradicted by his allegation that he was unable to drive farther than 18 miles a day and by doctor certificates he submitted describing his condition as temporarily totally disabled. The County was entitled to rely on those doctor certificates as the basis for concluding that plaintiff could not perform the essential requirements of his job. (*Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 229.)

Plaintiff failed to adequately allege that a reasonable accommodation was available in light of his condition. The trial court accordingly did not err by sustaining the demurrer to plaintiff's cause of action for failure to engage in the interactive process. (*Nadaf-Rahrov, supra*, 166 Cal.App.4th at p. 984.)

## V. Section 1983

Section 1983 "creates a cause of action in favor of 'the party injured' against '[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights . . . secured by the Constitution and laws . . . .' (42 U.S.C. § 1983.)" (*County of Los Angeles v. Superior Court* (1999) 21 Cal.4th 292, 297.)

Section 1983 is not itself a source of substantive rights, "'but merely provides "a method for vindicating federal rights elsewhere conferred."' [Citations.]" (*County of Los Angeles v. Superior Court, supra*, 21 Cal.4th at p. 297.) It allows actions against state or

local officials for actions that have violated constitutional rights. (*Manta Management Corp. v. City of San Bernardino* (2008) 43 Cal.4th 400, 406.)

There are two essential elements of a claim under section 1983: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. (*Vergos v. McNeal* (2007) 146 Cal.App.4th 1387, 1402.)

### A. Individual defendants

Plaintiff's third amended complaint alleges the following conduct by individual defendants Monique Conard, Debbie Craig, and Dina Miller.

#### 1. Monique Conard

Monique Conard was one of the Probation Department's return to work coordinators. Plaintiff left telephone messages for Conard on September 25 and 27, 2007, informing her that he needed to return to work. Conard did not return those calls. On October 1, 2007, plaintiff spoke with Conard, who stated that the Probation Department had no light duty positions available and advised plaintiff to look for another job. On October 12, and 16, 2007, November 7 and 8, 2007, and February 7 and 12, 2008, plaintiff either left messages for or spoke with Conard, who advised plaintiff: "'Have any restrictions removed, otherwise look for another job,' or words to that effect."

#### 2. Debbie Craig

The Probation Department sent plaintiff a "Request for Proof of Absence" on June 4 and July 7, 2009, requesting a medical certification for his absence from work. The request advised plaintiff to contact Debbie Craig, the return to work coordinator, if he had any questions. On July 23, 2009, Dr. Levine, an agreed medical examiner, faxed a return to work certificate to Craig notifying the Probation Department that plaintiff could return to work on November 1, 2009. On August 24 and 25, 2009, plaintiff spoke with Craig, who informed plaintiff that the Probation Department does not take restrictions and said, "don't call me, I'll call you."

### 3. Dina Miller

On December 19, 2009, the Probation Department sent plaintiff a "Request for Proof of Absence" that instructed him to contact Dina Miller if he had any questions. On March 5, 2010, plaintiff spoke to Miller and provided a doctor's note to return to work. Miller told plaintiff, "don't call us, we'll call you."

The foregoing allegations are insufficient to state a section 1983 claim against any of the individual defendants. There is no allegation that any of the individual defendants violated any federal constitutional right. Although plaintiff argues in this appeal that the individual defendants violated his First Amendment rights by placing him into a "job limbo" after he spoke out against an unsafe and unhealthy work environment, the third amended complaint contains no such allegations against these defendants.

Plaintiff further argues that he stated a claim against the individual defendants for supervisory liability under section 1983. "To establish supervisor liability under section 1983, [plaintiff] was require to prove: (1) the supervisor had actual or constructive knowledge of the . . . wrongful conduct; (2) the supervisor's response "'was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'"'; and (3) the existence of "'an affirmative causal link'" between the supervisor's inaction and [plaintiff's] injuries. [Citations.]" (*Grassilli v. Barr* (2006) 142 Cal.App.4th 1260, 1279-1280.)

Plaintiff's section 1983 allegations against the individual defendants do not allege whether they are being sued in their individual or official capacities. There is no allegation that any of the individual defendants held any supervisory position or that they had any knowledge that plaintiff had expressed concerns about an unhealthy or unsafe work environment. "Under section 1983, a complaint as to individual defendants is insufficient if it does not plead specific facts regarding the individual capacities of the defendants and the specific facts of each [citation]. Personal involvement of the defendant is a necessary element of the cause of action [citation]. Supervisory personnel may not be held liable purely on a respondeat superior theory [citation]." (*Kreutzer v. County of San Diego* (1984) 153 Cal.App.3d 62, 70.) Plaintiff's allegations are

16

insufficient to state a section 1983 claim against the individual defendants. The trial court did not err in sustaining the demurrer as to those claims.

### B. The County

To state section 1983 claim against a municipal entity such as the County, the plaintiff must plead that an unconstitutional action resulted from a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by the municipal entity's officers. (*Monell v. Dept. of Soc. Servs.* (1978) 436 U.S. 658, 690-691.) "Proof of a single incident of unconstitutional activity is not sufficient to establish liability under [section 1983] unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." (*Oklahoma City v. Tuttle* (1985) 471 U.S. 808, 823-824; see also *Trevino v. Gates* (9th Cir. 1996) 99 F.3d 911, 918 [municipal liability may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out the policy].)

Plaintiff fails to identify any unconstitutional County practice or policy. His third amended complaint alleges that defendants "acted under color of statute, regulation, ordinance, custom, policy, practice, and/or usage of . . . County" but does not identify the offending policy. That allegation, unsupported by any facts, is a legal conclusion insufficient to state a claim under section 1983. (*Revene v. Charles County Comm'rs* (4th Cir.1989) 882 F.2d 870, 875 [section 1983 claim properly dismissed when "critical allegations of a municipal policy . . . are asserted entirely as legal conclusions"].)

## VI. Denial of leave to amend

Plaintiff fails to suggest how he would amend his third amended complaint to correct the defects noted above. The burden of proving a reasonable possibility of amending the complaint to state a cause of action "is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) The trial court therefore did not abuse its discretion by sustaining the demurrer without leave to amend.

## DISPOSITION

The order dismissing plaintiff's action is affirmed.  Defendants are awarded their costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ


We concur:


_____, P. J.
BOREN


_____, J.
HOFFSTADT